UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────

BENJAMIN ASHMORE,

                    Plaintiff,                    11-CIV-8611 (AT-JLC)

        v.

CGI GROUP INC. and CGI FEDERAL INC.,

                    Defendants.

───────────────────────────────

## REPLY DECLARATION OF MARYBETH CARRAGHER IN FURTHER SUPPORT OF CGI GROUP, INC. AND CGI FEDERAL INC.'S MOTION FOR SUMMARY JUDGMENT

        MARYBETH CARRAGHER hereby declares under penalty of perjury pursuant to 28 U.S.C. § 1746:

        1.      I am the Vice President of Consulting Services and the leader of CGI Federal Inc.'s ("CGI") nationwide PBCA practice.  I respectfully submit this Reply Declaration in further support of defendants CGI Federal Inc. and CGI Group Inc.'s (collectively referred to in this Declaration as "CGI") motion for summary judgment.

        2.      The purpose of this Reply Declaration is to address certain baseless assertions that plaintiff Benjamin Ashmore ("Ashmore") sets forth in his opposition papers to CGI's previously filed motion for summary judgment.

_Ashmore's Breach of Contract Cause of Action_

        3.      Ashmore alleges in his opposition papers that I promised him he would receive a bonus equivalent to his salary.  I can unequivocally say at no point in

time did I ever promise Ashmore, or for that matter any CGI employee under my supervision, a bonus equivalent to his/her salary.

4.      The documents Ashmore submits with his opposition papers completely contradict his baseless assertion that I promised him a bonus equivalent to his salary.

5.      By email dated April 21, 2009 (Herbst Declaration Ex. 17), Ashmore informed me that he had "received the verbal offer from Jeff today and accepted."  Jeff refers to Jeff Kniess, an internal recruiter at CGI.

6.      Based upon Ashmore's own email, it was Jeff who made Ashmore his offer of employment, not me.

7.      Furthermore, the internal CGI documents that were generated prior to Ashmore's offer of employment (Herbst Decl. Ex. 18) confirm that Ashmore's compensation was $126,000, not $126,000 plus a bonus equivalent to his salary.

8.      Additionally, in an April 21, 2009 email that Mr. Kniess sent to me, which was drafted prior to Ashmore's verbal offer of employment being made, Mr. Kniess states, "I will reach out to Ben and extend a formal offer (base salary: $126,000) and explained that initially he will be eligible for profit sharing, but he may decide to opt for a commission payout at a later date.  However, he will not be eligible to receive both profit sharing and a commission payout."  Id.  Once again, there is absolutely zero reference to Ashmore's baseless assertion that he was promised a bonus equivalent to his salary.

9.      Following Ashmore's conversation with Mr. Kneiss in which he "accepted" CGI's "verbal offer" of employment (Herbst Decl. Ex. 17), Ashmore received

an offer letter from CGI, a copy of which is Exhibit 1 to my previously filed February 12, 2015 Declaration.

10.     Ashmore's offer letter similarly fails to contain any reference that he would receive a bonus equivalent to his base salary.

11.     At no point in time during Ashmore's employment with CGI, during his April 2010 Performance Review, or even in his post-termination letters and conversation with me, did he ever mention that CGI failed to pay him a bonus equivalent to his salary.

12.     Lastly, Ashmore cites to an August 2009 e-mail entitled "Emerging Talent Initiative" in an attempt to create the impression that he was a CGI superstar. Like Ashmore's breach of contract cause of action, Ashmore's interpretation of this email is completely inaccurate.  First, from a timing perspective, this e-mail was sent less than four (4) months after Ashmore joined CGI, which was prior to Ashmore's numerous shortcomings being brought to light.  Second, the spreadsheet attached to the August 24, 2009 email was not a listing of the 367 people in my business unit, as Ashmore mistakenly states.  Rather, the list attached to this email was only a list of those few members in Mr. Kyprianou's group (Mr. Kyprianou sent the email, not me). Third, under the category of "PPP Ranking" and "Stock Options Ranking," Ashmore was ranked as "2" which equates to those individuals who were in the top 11-30% of the specific group, not "1" which was for the top 10% of Kyprianou's group.

*Ashmore's Baseless Whistleblower Cause of Action*

13.     From the inception of this action CGI has steadfastly maintained that Ashmore's whistleblower allegations are a complete and utter fabrication.

14.     Though Ashmore admits in his opposition papers to CGI's motion for summary judgment that he has no documentary evidence to establish that he engaged in any "whistleblowing activity," he wants the Court to take him at his word that on May 11, 2010 he allegedly had a conversation with me where he objected to his conjured-up "shell company" scheme allegation.

15.     This May 11, 2010 conversation simply never occurred, and Ashmore's own communications establish that the aforementioned conversation never occurred -- which in turn proves that Ashmore never engaged in any Sarbanes-Oxley protected activity.

16.     In Ashmore' opposition papers to CGI's motion for summary judgment, Ashmore states that "[o]n a May 11 Rat Pack call, Ashmore heard the director shell company scheme discussed again, in more concrete terms . . . Immediately after that call, Ashmore called Carragher and communicated his last and strongest objection to the scheme which she had just directed be ratcheted up."  Opp. Br. p. 16-17.

17.     The premise of Ashmore's allegation is that following his alleged participation in a May 11, 2010 Rebid Assessment Team meeting, he supposedly voiced certain objections to me.

18.     Though CGI does not dispute a May 11, 2010 Rebid Assessment Team meeting was conducted, the documentary evidence conclusively establishes that Ashmore did not attend this meeting.

19.     In an email dated May 11, 2010, which Ashmore described in the

"Subject" line as "rat pack," Ashmore informed me that:

> I'm meeting with Linda Methia and then the HUD PBA team this
> morning ***so I won't be able to join***.

See Exhibit "A" attached hereto (emphasis added).  This email confirms Ashmore did

not participate in the May 11, 2010 Rebid Assessment Team Meeting.

20.     In addition to not attending the Tuesday, May 11, 2010 Rebid

Assessment Team Meeting, Ashmore's time records for May 11, 2010 also reveal that

he did not do any PBCA rebid work on May 11, 2010, which provides further support

that his alleged conversation with me on May 11th never occurred.  On May 11, 2010, all

of Ashmore's recorded time was assigned to the "BNP.GOV.14" billing code, which was

not the billing code used for CGI's PBCA HUD re-compete work.  See Exhibit "B"

attached hereto.

21.     Ashmore further alleges in his opposition papers that:

> On May 14, three days after Ashmore's May 11 call to Carragher,
> HUD decided internally to move forward with the unit cap.  Within a
> day or two, Carragher learned from HUD that a decision had been
> reached to impose the unit cap and that this would soon be publicly
> announced. That evening, very upset, Carragher conveyed this
> news to Ashmore, CGI Federal Director Ryan, and independent
> consultant Clause over dinner [at Tosca in Washington, D.C.].

Opp. Br. p. 18 (internal citations omitted).

22.     Similar to Ashmore's non-existent May 11, 2010 conversation with

me, there was no such dinner between myself, Ashmore, Dennis Ryan and Joyce

Clause.

23.     On May 13, 2010, which was a Thursday, I flew from Cleveland,

Ohio to Washington D.C. to attend an all day and evening Offsite Management Meeting

which was conducted at the Waterford at Fair Oaks, in Fairfax, Virginia. See Exhibit "C"
attached hereto. I returned to Cleveland on May 14, 2010 on a 1:59 pm flight. Id.

24.    Furthermore, a printout of my calendar reveals that on the morning
of Monday May 17, 2010 I took my car in to be repaired to Larchmere Imports in
Cleveland, Ohio, and on the evening of May 18th I had a haircut appointment in
Cleveland. See Exhibit "D" attached hereto.

25.    On May 20, 2010 I flew from Cleveland to Newark Liberty
International Airport because on May 21, 2010 I closed on my apartment in New York
City. Id.

26.    The above time-line debunks Ashmore's baseless assertion that I,
over dinner in Washington, D.C., informed him about HUD's alleged decision to move
forward with the unit cap.

27.    Finally, in an attempt to overcome the fact that he has zero proof
that he ever engaged in any whistleblowing activity, Ashmore alleges in his opposition
papers that after his supposed, and now disproved May 11, 2010 conversation with me,
he was "cut off" from CGI's Senior Management Committee Meetings. Ashmore further
alleges that this action was taken as some form of retribution for his alleged objections
to his conjured-up "shell company" scheme allegation.

28.    The documentary record also conclusively establishes that
Ashmore was not "cut off" from any Senior Management Committee Meetings post May
11, 2010 in retaliation for his non-existent objections. In fact, the record proves quite
the contrary.

29.     The documentary record reveals that in October, November and December 2009 Ashmore may have participated in certain Senior Management Committee Meetings.  <u>See</u> Exhibit "E" attached hereto.

30.     However, the record also reveals, which Ashmore completely ignores, that starting in January 2010, Ashmore, as well as other members of the Rebid Assessment Team, no longer participated in these meetings because I determined that their participation in such meetings was non-productive "because it is usually just [a] summary of Rat Pack and other meetings."  <u>See</u> Exhibit "F" attached hereto.

31.     In addition to not participating in the January 2010 Senior Management Committee Meeting, Ashmore also did not participate in the February, March or May 2010 meetings.[1]  <u>See</u> Exhibit "G" attached hereto.

32.     Not only does the documentary record conclusively discredit Ashmore's baseless assertion that he was "cut off" from CGI Senior Management Committee Meetings following his non-existent May 11, 2010 conversation with me, the documentary record further establishes that post May 11, 2010 Ashmore continued to be privy to highly confidential and proprietary business information regarding CGI's PBCA rebid efforts.

33.     For example on May 18, 2010, May 24, 2010 and May 28, 2010, all of which were <u>after</u> Ashmore's alleged conversation with me, Ashmore was provided a litany of highly confidential and proprietary PBCA information in preparation for various team meetings.  Attached hereto as Exhibit "H" are those emails evidencing that Ashmore was provided confidential and proprietary PBCA rebid information in advance

---

[1]     Other members of the Rebid Assessment Team that did not participate in these meetings were Shawn Steen, Tony Gorris, Leslie Pierce and Tracey Rudy.

of the above-referenced Rebid Assessment Team Meetings.  Exhibit "I" contains an

exemplar of the types of information that Ashmore was provided in advance of the June

1, 2010 Rebid Assessment Team Meeting.

34.    If CGI was devising some sort of master plan to "cut off" Ashmore

from everything PBCA related, then why would Ashmore continue to be provided with

such highly confidential and proprietary business information – information that would

provide a competitor a roadmap to CGI's PBCA pursuit effort.

35.    As set forth above, the documentary evidence completely discredits

Ashmore's baseless breach of contract and Sarbanes Oxley causes of action in their

entirety.

WHEREFORE, based upon the foregoing reasons, I respectfully request

that Defendants CGI Group Inc. and CGI Federal Inc.'s motion for summary judgment

be granted in its entirety and Plaintiff's Complaint be dismissed.


I declare under penalty of perjury that the foregoing is true and correct.


Dated:   March 26, 2015
         New York, New York

By: _____
    Marybeth Carragher