UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

BARBARA A. EDWARDS, CHAPTER 7
TRUSTEE OF THE BANKRUPTY ESTATE
OF BENJAMIN JEFFREY ASHMORE,

               Plaintiff,

     v.

CGI GROUP INC. and CGI FEDERAL INC.,

               Defendants.

_____

11-CIV-8611 (AT/JC)


ORAL ARGUMENT REQUESTED

---

**FORMER PLAINTIFF BENJAMIN ASHMORE'S
REPLY MEMORANDUM OF LAW
IN SUPPORT OF HIS CROSS-MOTION FOR
RECONSIDERATION OF THIS COURT'S MAY 9, 2016 ORDER**

---

HERBST LAW PLLC
Robert L. Herbst
420 Lexington Avenue, Ste 300
New York, New York 10170
Tel (646) 543-2354
Fax (888) 482-4676
rherbst@herbstlawny.com

*Attorneys for Benjamin Ashmore*

<u>**PRELIMINARY STATEMENT**</u>

Defendants have filed two separate documents containing arguments opposed to Mr. Ashmore's cross-motion for reconsideration of this Court's May 9, 2016 Order concerning the 2013 abandonment – ECF 279 and ECF 280, one 20 pages and one 12 pages – thereby attempting to avoid the 20-page limitation to which we consented (see ECF 275). This memorandum of law replies to those arguments regardless of in which document they are contained.

Section III of ECF 280, entitled "Brief Response to Ashmore's Other Arguments," is an unauthorized sur-reply to our Reply on the Motion to Substitute Mr. Ashmore for the Trustee, and should be stricken and disregarded by this Court. We do not address that sur-reply in this Reply Memorandum of Law. If the Court determines to consider those sur-reply arguments, we would request leave to file a separate reply addressing them.

<u>**ARGUMENT**</u>

**I. CGI FINALLY ACKNOWLEDGES THAT IT, RATHER THAN MR. ASHMORE, HAS PLAYED FAST AND LOOSE WITH THIS COURT**

In ECF 279, at 9 n. 8, CGI and its attorneys have for the first time admitted that prior CGI attorney Stuart Klein received the Letter Agreement from Mr. Ashmore in November 2013. CGI and Proskauer have never before acknowledged this. Instead, they attempted to obscure it in their letters and briefs to this Court,[1] even after Mr. Ashmore pointed out several times that,

---

[1] *See, e.g.,* September 8, 2015 letter Fasman to the Court, ECF 151, at 3 ("Mr. Fasman of Proskauer Rose entered his appearance in this case on August 18, 2015. Around that time, our firm became aware that the Trustee had entered into a letter agreement with Mr. Ashmore[.]"); November 6, 2015 Fasman letter to the Court, ECF 181, at 2 ("What followed thereafter were, apparently, private discussions between Ashmore and the Trustee leading to the September 16, 2013 letter agreement that Your Honor already has in hand. *See* ECF No. 172-2. Ashmore did not provide the Defendants notice of his bankruptcy case upon filing his bankruptcy petition, and therefore the Defendants knew nothing about these private discussions[.]"); Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(1) filed on November 23, 2015, ECF 189, at 7-8 ("**The Former Trustee and Ashmore enter into a private letter agreement, but fail to disclose its existence to this Court, the Bankruptcy Court, or Defendants**'). CGI also played fast and loose with the Second Circuit Court of Appeals. In its Brief for Defendants-Appellees filed on September 22, 2016, 2d Cir. ECF 109, at

1

when he was still representing himself *pro se* in this case, he had forthrightly sent the Letter Agreement to Mr. Klein and CGI rather than conceal it from them.

CGI and its attorneys received the Letter Agreement from Mr. Ashmore on November 6, 2013, less than two months after the Trustee had extracted it from him. For the next two years, CGI and its attorneys acquiesced in the September 2013 abandonment of this action by the Trustee to Mr. Ashmore, (correctly) believing that there was no deficiency in Mr. Ashmore's disclosure of this action in his bankruptcy petition's SOFA, no defect in the 2013 abandonment, and no defect in Mr. Ashmore's standing to prosecute this action to conclusion after that abandonment.

What is now clear is that, when CGI and its prior attorneys acquiesced for these two years in the abandonment, they knew everything there was to know about Mr. Ashmore's bankruptcy case, including the Letter Agreement and its contents, and the so-called "private discussions" and agreements contained therein. Despite this now-conceded knowledge, starting in late 2015, after this Court denied CGI's motion for summary judgment, CGI and its new Proskauer attorneys, have been disingenuously using this feigned non-disclosure as a cornerstone of their efforts to convince this Court to overturn the 2013 abandonment.

Had CGI forthrightly acknowledged receiving the Letter Agreement in early November 2013, it would have been subject to the same principles of waiver and estoppel – with respect to its argument that the 2013 abandonment was defective and a nullity – that it is attempting to invoke here with respect to Mr. Ashmore's standing and substitution back as the proper party in interest in this case. It might also have had to explain why CGI and its prior attorneys, with the same access to the Trustee, the Letter Agreement and bankruptcy docket, believed that the listing

---

page 22 of 76, CGI said: "At the time, the Letter Agreement was not disclosed to the District Court, the Bankruptcy Court, Ashmore's creditors, or CGI."

of the lawsuit in the SOFA, and the subsequent disclosures by Mr. Ashmore of the lawsuit and all its particulars, were sufficient for abandonment.

So rather than admitting that CGI and its prior counsel were explicitly aware of the Letter Agreement two years before, CGI and its new attorneys represented to this Court that they had only recently discovered – "became aware" – that there was such a Letter Agreement. *See* ECF 151, at 3, n. 1 *ante*. They also falsely represented to this Court that Mr. Ashmore had failed to disclose the existence of the Letter Agreement to defendants, and that for the two-year period of CGI's acquiescence in the abandonment, "Defendants knew nothing about these private discussions" reflected in that Letter Agreement. *See* n. 1, *ante*, ECF 189, at 7-8; ECF 181, at 2. This conduct is worse than "playing fast and loose" with this Court.

It is a testament to CGI's skills in sleight-of-hand that it still argues today that it was Mr. Ashmore, not CGI or its attorneys, who "abdicate[d] his responsibilities" to disclose the Letter Agreement to this Court, even while admitting for the first time that CGI received the document in early November 2013. Like Mr. Ashmore, CGI and its attorneys did not disclose it because they believed that the Letter Agreement was irrelevant to the issue of whether the Trustee abandoned this lawsuit to Mr. Ashmore when she closed the bankruptcy case after the lawsuit had been listed in the SOFA and fully disclosed in the bankruptcy case, and after the Trustee fully considered whether to administer the action herself and determined not to do so. And they were right.

What has sidetracked this litigation for years has not been *pro se* debtor Mr. Ashmore's alleged failure to disclose this lawsuit in his bankruptcy case – his disclosures of this action, early and often, are all over this record. What has sidetracked this litigation is CGI's manipulations to change its position after almost two years of acquiescence in a proper

abandonment in 2013, falsely contending that CGI has been an unwitting victim of an improper abandonment. Those manipulations should be soundly rejected going forward. CGI should not be permitted to escape the trial they are seeking to avoid in this case.

CGI returns to the Letter Agreement, ECF 279 at 17, when it says that this Court should excuse (1) CGI's failure to disclose until December 11, 2017 that prior counsel had received the Letter Agreement in November 2013, (2) CGI's prior failure to disclose that Letter Agreement to both this Court and the Bankruptcy Court, and (3) its acquiescence for almost two years in the position that (a) Mr. Ashmore had adequately "scheduled" this lawsuit in his bankruptcy petition, (b) adequately disclosed this lawsuit subsequently in the bankruptcy case, (c) the Trustee had properly abandoned this action to Mr. Ashmore under 554(c), and (d) Mr. Ashmore has thereafter had proper standing to prosecute this action. CGI now argues that this Court should not consider its subsequent change in position on all these issues estopped or waived because its change of position was not "an extreme set of facts." *Id.* Although the doctrines of waiver, or judicial or equitable estoppel, applied in *Frittita v. Fanny's Supper Club*, 2000 U.S. Dist. LEXIS 23071 *16 (W.D.N.Y. Aug. 8, 2000), and other cases, nowhere require "an extreme set of facts," the facts here are the very essence of extreme.

CGI's change in position has caused Mr. Ashmore to be delayed in trial for two years and has required the expenditure of many hundreds of thousands of dollars of attorney time and expenses in this Court, the Court of Appeals, and the Bankruptcy Court. It has also compelled Mr. Ashmore to borrow substantially from a litigation funder to secure a second abandonment under 554(a). CGI's shift in position for tactical and strategic advantage should not be countenanced by this Court, especially when it has now admitted for the first time that CGI had knowledge of all the facts and arguments on these issues that Proskauer later exploited while

obscuring that knowledge. This clearly constitutes "an extreme set of facts" which has deeply prejudiced Mr. Ashmore. It constitutes playing fast and loose with this Court, and is deserving of sanction, not approbation. This Court should hold that CGI has waived, and is equitably and judicially estopped, from changing its position and walking away from its acquiescence in the 2013 abandonment.

The deeply misleading character of CGI's papers continues when CGI argues that Mr. Ashmore was inconsistent when he "prosecute[d] a lawsuit in one court while representing to another it does not have a lawsuit." ECF 279, at 7. This record makes clear that this assertion is false because, from the very beginning of his bankruptcy case and throughout its pendency, Mr. Ashmore clearly and frequently disclosed this lawsuit. CGI's contention to the contrary is manifestly and demonstrably untrue. So is CGI's suggestion, *id.*, at 11, that in granting a discharge on November 18, 2013, the Bankruptcy Court somehow did not realize that the lawsuit existed. In fact, when Bankruptcy Judge Stern denied Mr. Ashmore's motion to dismiss the bankruptcy case on July 23, 2013 (five months prior to granting the discharge), Judge Stern relied in doing so on the very existence of this lawsuit. ECF 278 at 8-9. Also manifestly and demonstrably untrue is CGI's argument that Mr. Ashmore concealed his claims in this lawsuit successfully, for years. ECF 279 at 13. No one assessing this record could credibly argue that Mr. Ashmore prosecuted this Action in this Court while representing to the Bankruptcy Court that he did not have this lawsuit. The factual record makes clear that Mr. Ashmore disclosed that he had this lawsuit in his bankruptcy petition and thereafter to the Trustee and the Bankruptcy Judge, and that the Trustee knew not only that the claim existed, but everything about its essential details and particulars. Mr. Ashmore never concealed, for one instant, this lawsuit from

the Trustee or his creditors or the Bankruptcy Court. [2]  It is Orwellian logic for CGI to argue, *id.*,

at 15, that Mr. Ashmore's statement to Judge Stern that "I'd like to have the power with respect

---

[2]     Defendants' cases all involve debtors who, unlike Mr. Ashmore, failed to disclose their lawsuits.
They are therefore all distinguishable: *Sea Trade Co. v. FleetBoston Fin. Corp.*, No. 03-cv-10254, 2008
WL 4129620, at *4 (S.D.N.Y. Sept. 4, 2008) (under applicable Argentine bankruptcy law, debtor "(i) did
not list Nani or the Bank as creditors; (ii) did not list the funding it received or expected to receive from
Nani as an asset; (iii) did not list the Bank's freezing of the Nani account as the cause of its insolvency;
and (iv) did not list the present cause of action against the Bank"); *Rosenshein v. Kleban*, 918 F. Supp. 98,
101 (S.D.N.Y. 1996) (in Chapter 11 bankruptcy, debtor failed to disclose claims on "schedules of
assets… [and] [f]urthermore, none of the debtors' disclosure statements referred to plaintiffs' claims");
*Casanova v. Pre Sols., Inc*., 228 F. App'x 837, 841 (11th Cir. 2007) (court looked only to debtor's SOFA,
not the Schedule B – and cited SOFA as the required disclosure under 11 U.S.C. §541 (a) – where, unlike
Mr. Ashmore, the debtor failed to disclose cause of action); *Wallace v. Johnston Coca-Cola Bottling
Grp.*, Inc., No. 1:06-cv-875, 2007 WL 927929, at *1-2 (S.D. Ohio Mar. 26, 2007) (debtor failed to
disclose lawsuit in Schedules and SOFA and court rejected claims of mistake because "Plaintiff was
represented by counsel throughout the bankruptcy proceedings. This fact undercuts any possibility that
Plaintiff's omission was due to lack of understanding of the bankruptcy process, at least to the extent that
such ignorance might have been reasonable: any question that he had about the required disclosures could
easily have been answered"); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 52 (S.D.N.Y. 1999) (debtor
"failed to disclose the existence and value of those Claims to its creditors and the bankruptcy court in its
Schedules or at any time during the pendency of its Chapter 11 case."); *Guay v. Burack*, 677 F.3d 10, 18-
20 (1st Cir. 2012) ("bankruptcy court ordered the Guays to file the additional information required by
Bankruptcy Rules 1019 and 1007, including information concerning any property interest acquired
subsequent to the filing of the bankruptcy petition [*i.e.* the undisclosed claim,]" then granted a discharge,
after which, "in response to the court's earlier order, the Guays filed an affidavit with the bankruptcy
court… stating that no amendments to their petition or asset schedules were necessary"); *Kaufman v.
Robinson Prop. Grp.*, No. 2:07-cv-048, 2009 WL 3003261, at *2 (N.D. Miss. Sept. 16, 2009) (debtor
"fail[ed] to list her claim on her petition"); *Reagan v. Lynch*, 524 S.E.2d 510, 511-12 (Ga. App. 1999)
(debtor "failed to list it as an asset in his bankruptcy petition"); *Marshall v. Honeywell Tech. Sys. Inc.*,
828 F.3d 923, 925 (D.C. Cir. 2016) (referring to the SOFA as "one of the schedules" debtor was required
to file, and noting that although debtor listed several other claims on her SOFA, "[n]owhere on her
Statement of Financial Affairs (or on any other schedule) did Marshall disclose her three administrative
proceedings against SGT, Honeywell, and Engility."); *Clarke v. United Parcel Serv., Inc.*, 421 B.R. 436,
439-41 (W.D. Tenn. 2010) (in a Chapter 13 bankruptcy where debtor made no disclosure, the court
observed that the "Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities, a
schedule of current income and current expenditures, and a statement of the debtor's financial affairs.");
*Mintz v. Transworld Sys.*, No. 14-cv-7044-JS-SIL, 2016 WL 4367221, at *5, (E.D.N.Y. May 16, 2016)
("It is undisputed that Plaintiff neither disclosed the existence of this action in his Chapter 7 petition, nor
claimed it as exempt from the bankruptcy estate in writing."); *Robinson v. Tyson Foods, Inc.*, 595 F.3d
1269, 1272-73 (11th Cir. 2010) (in Chapter 13 case "Robinson failed to disclose her employment
discrimination suit to the bankruptcy court" and "Robinson failed to list the claim anywhere on her
bankruptcy schedules. When asked whether she had any suits or administrative proceedings pending,
Robinson checked "NONE" on the schedule disclosure forms."); *Coffaro v. Crespo*, 721 F. Supp. 2d 141,
143 (E.D.N.Y. 2010) (neither the painting nor the claims against Aime or other parties for conversion or
theft were listed at all on debtor's bankruptcy petition); *Leible v. Goodyear Tire & Rubber Co.*, No. 13-
cv-00047A, 2015 WL 5542447, at *1, 3 (W.D.N.Y. Sept. 18, 2015) (debtor "discussed his personal injury
claim with his bankruptcy attorney" but failed to disclose it in his petition, or in his later amended

to the whistleblower action to resolve that matter," constituted "contemporaneous evidence of his intention to conceal the lawsuit[.]"

Even CGI's suggestion that Mr. Ashmore "merely informed the Trustee that he had depositions scheduled in a pending case, without identifying the substance of the litigation or that he was the plaintiff" in this action in the Southern District of New York, *id.*, at 2, is false. CGI simply ignores the record both in this case and the Bankruptcy Court. In addition to Mr. Ashmore's disclosures in the SOFA that he was the plaintiff *in this Action,* identifying it as an employment case, with its caption, case number and court, he also stated truthfully in the Bankruptcy Court:

> At the originally calendared May 13, 2013 §341(a) Meeting of Creditors, I further disclosed the SOX action to the trustee Barbara Edwards ("Edwards"), informing her that depositions were scheduled in the SOX action on the dates she proposed to reschedule the Meeting of Creditors, because I did not have my social security card. The Certification Edwards filed on May 22, 2013 in this Court reflected my disclosure of these depositions. (Doc. 9, at ¶3).

---

schedule of assets); *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 474-75 (6th Cir. 2010) (in Chapter 13 "bankruptcy filings, White did not mention her harassment claim" including "in the Statement of Financial Affairs, under Section 4" where debtor omitted her claim but listed another action to which she was a party, nor did debtor mention claim at the meeting of creditors or plan confirmation hearing); *Reed v. City of Arlington*, 650 F.3d 571, 572-73 (5th Cir. 2011) (after winning a $1m FMLA judgment, debtor filed for bankruptcy during appeal of judgment without disclosing it); *Jenkins v. Home Depot USA, Inc.*, No. 4:06-cv-161, 2007 WL 1567615, at *2 (E.D. Tex. May 30, 2007) (debtor omitted the personal injury claim from her "mandatory bankruptcy filings" and prior to discharge, "her claim against Home Depot was not disclosed to the bankruptcy court"); *United States v. GSD&M Idea City LLC*, No. 3:11-cv-1154-O, 2014 WL 11320447, at *4 (N.D. Tex. June 10, 2014) (debtor-relator "acknowledge[d] that he did not disclose the instant action against GSD&M in his [Chapter 13] bankruptcy proceeding and that the bankruptcy court did not modify his plan"); *Cook v. St. John Health*, No. 10-10016, 2013 WL 2338376, at *2 (E.D. Mich. May 29, 2013) (in Chapter 13 petition, debtor failed to disclose claim, signed an agreement in which she "agreed to inform her bankruptcy attorney 'immediately' of any material changes" and subsequently filed three amendments to bankruptcy filing without disclosing claim); and *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1153-54 (10th Cir. 2007) (debtor failed to disclose personal injury suit in his Schedules and SOFA, at his §341(a) Meeting of Creditors, "Gardner unequivocally responded "no" when the trustee asked him if he had a personal injury suit pending" ***and*** when granted a discharge, "[n]either the district court nor counsel involved in Gardner's personal injury suit had yet to learn of his bankruptcy")

ECF 225-2 at 4 (¶ 9).  That first meeting of creditors is reflected on the bankruptcy docket as

having occurred on May 13, 2013.  ECF 270-2 at 4.  Moreover, as CGI and its attorneys well

know, the Trustee herself has certified under oath in the Bankruptcy Court, Bankr. Doc. 145-2, at

2, ¶ 6:

> The SOX Action was disclosed in the Debtor's Statement of Financial
> Affairs and the Debtor testified regarding that litigation at the first meeting
> of creditors held under Section 341 of the Bankruptcy Code in the Chapter 7
> case.[3]

In the face of this undisputed evidence, CGI again clings to the Trustee's former attorney's July

17, 2013 letter mistakenly suggesting that the Trustee had just learned that Mr. Ashmore was

"plaintiff in a substantial whistleblower lawsuit."  However, as we have repeatedly noted, the

Trustee's current counsel has corrected that obvious mistake by the Trustee's former counsel.

*See* ECF 278, at 7 (citing ECF 175).

## II.  CGI'S ATTEMPT TO AVOID *BPP ILLINOIS* AND *IN RE KANE* IS WITHOUT MERIT

With respect to the cross-motion for reconsideration of this Court's May 9, 2016 Order,

the critical issue identified in that Order by this Court was the scope of Mr. Ashmore's

obligation, as a New Jersey resident filing a bankruptcy petition in the District of New Jersey, to

disclose this action in his petition (and thereafter in his bankruptcy case).  What *BPP Illinois*

holds is that this Court must apply Third Circuit law – the law of the Circuit in which the

bankruptcy case was venued – to determine the scope of that obligation, *i.e.*, to determine

whether Mr. Ashmore's disclosure of this action in his SOFA, and thereafter in the bankruptcy

---

[3]  Remarkably and inexcusably, CGI omitted this August 29, 2017 Certification of the Trustee from its
exhibit (ECF 270-26) containing Bankr. Doc. 145 (*i.e.* the Trustee's motion to approve the Consent
Stipulation), apparently to conceal this sworn statement by the Trustee demonstrating that this contention
of CGI's is false.  This Certification is annexed hereto as Exhibit 1.

case, was sufficient to satisfy his disclosure obligation under the bankruptcy law and rules concerning abandonment.

That is why *BPP Illinois* constitutes a clarifying or intervening change in controlling law. It is not because *BPP Illinois* was decided on judicial estoppel grounds, or established different standards for analysis of the doctrines of judicial estoppel or standing, as CGI mistakenly argues. ECF 280, at pages 8 and 9 of 16. In its May 9, 2016 Order, this Court (1) construed Second Circuit law to require that Mr. Ashmore disclose this lawsuit in the Schedule B, notwithstanding his simultaneous disclosure of it in his SOFA, and (2) held irrelevant his subsequent disclosures to the Trustee and Bankruptcy Court prior to the Trustee's abandonment of the case to him in September 2013. In light of *BPP Illinois*, applying Second Circuit rather than Third Circuit law to determine the scope of Mr. Ashmore's disclosure obligations was error and must be corrected.[4]

Under Third Circuit law, if Mr. Ashmore's listing of this lawsuit in his SOFA was sufficient to satisfy Section 554(c)'s requirement that property be scheduled under Section 521(a)(1), or if that initial disclosure, together with the subsequent disclosures to the Trustee of his SOX claim in the action, were sufficient to permit the Trustee to knowledgeably determine whether or not to abandon the lawsuit to Mr. Ashmore rather than administer the action herself, then the May 9, 2016 Order should be revised to recognize and confirm that abandonment.

CGI's protestations notwithstanding, *In re Kane* is on all fours with this case and definitively answered those questions in the affirmative. *See* ECF 278, at 25-27. CGI concedes that Ms. Kane "did not explicitly list" her inchoate claim for equitable distribution or provide a

---

[4]  Indeed, as we read ECF 280, at pages 8-10 of 16, CGI does not specifically dispute that *BPP Illinois* requires this Court to apply Third Circuit law to the issue of whether Ashmore's disclosure of this action in his SOFA was sufficient "scheduling" and disclosure in its own right for purposes of the issues abandonment and standing.

dollar amount for that claim in her Schedule B. ECF 280, at 7. She only listed the divorce, the lawsuit which embodied her equitable distribution claim, in her SOFA. *Kane* held that the Trustee nevertheless abandoned Ms. Kane's equitable distribution interest to her, either considering it "scheduled," or unscheduled, but having determined its relative value and benefit to the estate and not otherwise administering it prior to discharge. That is both conceptually and practically identical to what the Trustee did here with Mr. Ashmore's inchoate SOX claim with no fixed value, embodied in this lawsuit: either considering it scheduled or unscheduled but fully disclosed, and not administering it prior to discharge, its relative value and benefit to the Estate having been knowledgeably considered by the Trustee, who decided for perfectly good reasons of business judgment not to administer it herself, but rather to abandon it to Mr. Ashmore to prosecute to conclusion.

Because the facts of *Kane* are conceptually and practically indistinguishable from those at bar, CGI effectively concedes that Third Circuit law supports Mr. Ashmore's cross-motion for reconsideration when it acknowledges, ECF 280, at 8 n. 3, that *Kane* has been recognized as holding "that a cause of action not scheduled by a chapter 7 debtor was nonetheless abandoned to the debtor on the facts there presented."

## CONCLUSION

This Court should revise the May 9, 2016 Order to recognize and validate the 2013 abandonment of this action to Ashmore by the New Jersey Bankruptcy Court, and confirm Mr. Ashmore's standing to prosecute this action to conclusion, as the proper party in interest.

Respectfully submitted,

HERBST LAW PLLC

/s/ Robert L. Herbst

_____

Robert L. Herbst
420 Lexington Avenue, Suite 300
New York, New York 10170
Tel:  (646) 543-2354
rherbst@herbstlawny.com
*Counsel to Benjamin J. Ashmore*

New York, New York
December 29, 2017

# Exhibit 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

FORMAN HOLT
66 Route 17 North, First Floor
Paramus, NJ  07652
Telephone:  (201) 845-1000
Facsimile:  (201) 655-6650
Michael E. Holt, Esq.
mholt@formanlaw.com
Special Counsel for Barbara A. Edwards, Chapter 7
Trustee

| | |
|---|---|
| In Re:<br><br>BENJAMIN JEFFERY ASHMORE,<br><br>      Debtor. | Case No.:   13-17450 (VFP)<br><br>Chapter:     7<br>Judge:      Vincent F. Papalia |

**CERTIFICATION OF BARBARA A. EDWARDS IN SUPPORT OF
MOTION FOR AN ORDER (1) APPROVING SETTLEMENT AND
(2) AUTHORIZING ABANDONMENT**

Barbara A. Edwards certifies the following:

1.  I am the trustee (the "Trustee") in the captioned matter.  This certification is submitted in support of my motion (the "Motion") for an order approving a proposed settlement in that matter and authorizing the abandonment of property of the estate.  A copy of the agreement memorializing the terms of that proposed settlement (the "Settlement Agreement") is attached hereto as Exhibit A.  I have personal knowledge of the facts set forth herein and am authorized to make this certification.

**BACKGROUND**

2.  On April 8, 2013 (the "Petition Date"), Benjamin J. Ashmore ("Ashmore" or "Debtor") commenced the captioned chapter 7 case (the "Chapter 7 Case") with the filing of a

voluntary chapter 7 petition with the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") [Doc. No. 1].

3.      Ashmore appeared *pro se* in the Chapter 7 Case.

4.      On April 9, 2013, I was appointed as interim trustee [Doc. No. 6] in the Chapter 7 Case under Section 701 of the Bankruptcy Code and I continue to serve as Trustee under Section 702(d).

5.      As of the Petition Date, Ashmore was the plaintiff in the litigation known as *Ashmore v. CGI Group and CGI Federal*, 11–cv-8611-AT-JCC (S.D.N.Y.) (the "SOX Action").

6.      The Debtor's interest in the SOX Action was not listed as an asset on Schedule B which was filed with his Chapter 7 petition.  The SOX Action was disclosed in the Debtor's Statement of Financial Affairs and the Debtor testified regarding that litigation at the first meeting of creditors held under Section 341 of the Bankruptcy Code in the Chapter 7 case.

7.      On June 19, 2013, Ashmore filed a motion to dismiss the Chapter 7 Case [Doc. No. 13]. On July 17, 2013, I filed opposition to that motion [Doc. No. 17].

8.      On June 21, 2013, Ashmore wrote me a letter generally describing the SOX Action and attaching the SOX Action Complaint. That letter was filed on the Bankruptcy Court's docket as Exhibit A to my opposition [Doc. No. 17] to the Debtor's motion to dismiss the Chapter 7 Case.

9.      On July 23, 2013, the Bankruptcy Court held a hearing and denied Ashmore's motion to dismiss the Chapter 7 Case.

10.     On September 16, 2013, the Debtor and I entered into a letter agreement regarding the SOX Action and related issues, and on September 17, 2013, I filed a Report of No Distribution in the Chapter 7 Case.

11.     On November 18, 2013, Ashmore received a discharge in the Chapter 7 Case under 11 U.S.C. §727 [Doc. No. 24].

12.     On September 22, 2015, I filed a motion for an order reopening the Chapter 7 Case (the "Motion to Reopen") [Doc. No. 27].

13.     I retained the law firm of Forman Holt Eliades & Youngman LLC ("FHEY") as my special counsel in connection with the Motion to Reopen and the Chapter 7 Case.

14.     Ashmore's attorneys advised FHEY that Ashmore intended to oppose the Motion to Reopen.

15.     On October 27, 2015, I withdrew the Motion to Reopen without prejudice [Doc. No. 31].

16.     On December 16, 2015, I filed a second motion for an order reopening the Chapter 7 Case (the "Second Motion to Reopen").

17.     On March 7, 2016, Ashmore filed opposition [Doc. No. 60] to the Second Motion to Reopen.

18.     On March 23, 2016, the Bankruptcy Court granted the Second Motion to Reopen and entered an Order reopening the Chapter 7 Case [Doc. No. 65].

19.     Ashmore retained the law firms of Golenbock Eiseman Assor Bell & Peskoe LLP, the Law Offices of Moshie Solomon, P.C., and Herbst Law PLLC, to represent him in connection with the reopened Chapter 7 Case.

20.     On April 5, 2016, Ashmore filed and served a motion entitled Debtor's Motion for Order (1) Determining that a Certain Asset was Abandoned to Debtor, and (2) In the Alternative Converting this Chapter 7 Case to a Chapter 11 Case (the "Abandonment Motion")[Doc. No. 76].

21.    On May 9, 2016, the Court in which the SOX Action is pending (the "District Court") issued a Memorandum and Order finding, among other things, that the SOX Action had not been abandoned by the Trustee under 11 U.S.C. Section 554(c) and dismissing the SOX Action, but stayed the closure of the SOX Action to July 8, 2016 to allow the Trustee time to substitute in as the proper plaintiff in that matter.

22.    On May 10, 2016, CGI Group, Inc. and CGI Federal, Inc., (collectively, "CGI") the defendants in the SOX Action, filed their opposition to the Abandonment Motion [Doc. No. 95].

23.    On June 2, 2016, the Debtor filed a notice of appeal (the "Appeal") to the Court of Appeals for the Second Circuit (the "Second Circuit") from the Memorandum and Order.

24.    On June 29, 2016, the Abandonment Motion was withdrawn without prejudice [Doc. No. 112].

25.    On August 3, 2016, the Debtor obtained a stay of the Memorandum and Order from a panel of the Second Circuit, which authorized me to file a motion to be substituted as plaintiff in the SOX Action.

26.    On August 9, 2016, I filed a motion (the "Substitution Motion") with the District Court to be substituted as plaintiff in the SOX Action.

27.    By Order dated October 25, 2016, the Substitution Motion was granted.

28.    On June 21, 2017, the Second Circuit dismissed the Appeal for lack of jurisdiction over the Memorandum and Order and, as a result, the SOX Action is currently deemed by the District Court to be property of the Estate.

29.    The Bar Date in the Chapter 7 Case for the filing of general unsecured claims passed on June 27, 2016, and, based on the claims register maintained by the Clerk of the

Bankruptcy Court, and taking into account the order entered by the Bankruptcy Court on June 29, 2016 [Doc. No. 113], which, among other things, held that the U.S. Department of Education (the "DOE") claim of $138,235.96 is allowed against the Debtor but not against the Debtor's estate, the filed claims in the Chapter 7 Case are in the amount of $50,356.88 (the "Claims").

30.    The Debtor has negotiated and executed a Funding Agreement (the "Funding Agreement"), a copy of which is annexed to the Settlement Agreement, with Cedar Glade LLC ("Funder") which provides for sufficient proceeds to pay (i) all allowed Claims and (ii) all allowed costs of administration in the Chapter 7 Case, including professional fees and expenses and the compensation of the Trustee (the "Administrative Costs").

31.    Under and in accordance with the Funding Agreement, the Funder will fund amounts needed to pay the allowed Claims and the allowed Administrative Costs in an amount up to $250,000 upon the effectiveness of a notice of abandonment abandoning the SOX Action to the Debtor under Section 554(a) of the Bankruptcy Code.

32.    As a result, the funding provided for in the Funding Agreement is sufficient to pay allowed Claims and allowed Administrative Costs.

33.    My attorneys were advised by the office of the United States Attorney for the District of New Jersey that the DOE was considering challenging the order estimating its claim at zero as against the Bankruptcy Estate but declaring that the claim is non-dischargeable and remains an obligation of the Debtor. My attorneys have since been advised by counsel for Ashmore that the issues regarding the potential dispute with the DOE are resolved and that the proposed settlement with the DOE will not increase the allowed claims against the Debtor's estate.

## THE SETTLEMENT

34.     The pertinent terms of the Settlement are:

A.     I agreed to file a Notice of Abandonment to Ashmore of any right, title or interest that the Estate has or may have in any and all assets of the Debtor, including, but not limited to, the SOX Action, pursuant to Section 554(a) of the Bankruptcy Code.  That notice was filed on August 23, 2017 [Doc. No. 140].

B.     Within five days of the effective date of the Notice of Abandonment pursuant to Rule 6007 of the Federal Rules of Bankruptcy Procedure and Rule 6007-1 of the Local Rules of Bankruptcy Court, the Debtor, with funds provided under the Funding Agreement, will (a) deliver sufficient funds to me to pay all of the allowed Claims and the Administrative Costs in full (the "Settlement Payment"); provided, however, that, upon approval of my final report and proposed distribution by the Court, I shall promptly return funds equal to the difference, if any, between the filed and allowed amount of any such Claims plus the Administrative Costs and the amount of the Settlement Payment.

C.     In the event that the Debtor fails to timely make the Settlement Payment, any abandonment of the property of the estate under Section 554(a) of the Bankruptcy Code will be vacated without further notice to creditors or order of the Court.

D.     Upon delivery of the Settlement Payment to me and the Notice of Abandonment becoming effective, I shall use my best efforts to reasonably cooperate with the Debtor in the substitution of the Debtor in the SOX Action as the plaintiff and proper party in interest, and shall execute such documents as are reasonably necessary to achieve that end; provided, however, that none of the obligations of the Debtor or the Trustee under

the Settlement are predicated upon or subject to the entry of an order by the District Court approving such substitution or upon the ultimate disposition of the SOX Action.

E.    Upon the abandonment of the SOX Action becoming effective under Section 554(a) of the Bankruptcy Code and as provided herein, the Debtor releases the Trustee and all of her professionals from all claims or causes of action, whether known or unknown in connection with the SOX Action and the Chapter 7 Case other than the Trustee's obligations to perform under the Settlement; provided, however, that the Debtor reserves the right to object to any applications by the Trustee and her professionals for allowance of Administrative Costs.

## APPROVAL OF THE SETTLEMENT

35.    I have reviewed the terms of the Settlement Agreement with my attorney and, in the exercise of my business judgment, believe that it is in the best interests of the estate.

36.    The settlement as proposed provides for a distribution of 100% to unsecured creditors and payment in full of the allowed costs of administration.  The estate cannot do any better than that.

37.    As discussed in greater detail in the approval motion, in the event that the proposed settlement is approved, the Debtor will bear the risks associated with continuing to prosecute the SOX Action.  None of the settlement's terms are contingent upon the outcome of that litigation.

38.    Also, if the proposed settlement is approved, abandonment of the SOX Action and other property of the estate as being of inconsequential value to the estate will be appropriate as there will be sufficient funds available to pay the Claims and Administrative Costs in full.

I hereby certify that the foregoing statements made by are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  August 29, 2017                    */s/ Barbara A. Edwards*_____
                                           Barbara A. Edwards