UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARBARA A. EDWARDS, CHAPTER 7 TRUSTEE OF
THE BANKRUPTCY ESTATE OF BENJAMIN
JEFFREY ASHMORE,

                              Ashmore,

                    -against-

CGI GROUP INC. and CGI FEDERAL INC.,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/10/2018

11 Civ. 8611 (AT)

**MEMORANDUM
AND ORDER**

ANALISA TORRES, District Judge:

Former Plaintiff, Benjamin Jeffrey Ashmore, filed this whistleblower action in 2011

alleging that Defendants, CGI Group Inc. and CGI Federal Inc., violated the anti-retaliation

provisions of Section 806 of the Sarbanes-Oxley Act of 2002, codified as amended at 18 U.S.C.

§ 1514A, when they fired him after he made various complaints regarding Defendants' alleged

scheme to evade affordable housing laws.[1]  Compl., ECF No. 1.  In 2013, while this action was

pending, Ashmore filed a voluntary *pro se* petition for Chapter 7 bankruptcy (the "Petition" or

the "Bankruptcy Action") in the United States Bankruptcy Court for the District of New Jersey

(the "Bankruptcy Court").  Petition, ECF No. 270-1.  Plaintiff, Barbara A. Edwards, Chapter 7

Trustee of the Bankruptcy Estate of Benjamin Jeffrey Ashmore (the "Trustee"), served as the

trustee of Ashmore's estate in the Bankruptcy Action.  Certificate of Notice, at 1, ECF No. 270-

3.

In a May 9, 2016 Memorandum and Order (the "2016 Order"), the Court ruled that

Ashmore lacked standing to prosecute this action because his claims were the property of the

bankruptcy estate.  ECF No. 228.  In August 2016, the Trustee moved, on behalf of the estate, to

---

[1] The Court assumes familiarity with the underlying Sarbanes-Oxley claims.  *See Ashmore v. CGI Group Inc.*, 138 F. Supp. 3d 329 (S.D.N.Y. 2015).

be substituted for Ashmore as Plaintiff in this action.  ECF No. 241.  The Court granted her motion in October 2016.  ECF No. 247.

In October 2017, the Bankruptcy Court approved a settlement of the Bankruptcy Action between Ashmore and the Trustee (the "Settlement").  The Settlement provides, among other things, for the Trustee to abandon the property of the bankruptcy estate, including this action, pursuant to 11 U.S.C. § 554(a).  Stipulation and Consent Order, ECF No. 264-1.

In light of the Bankruptcy Court's approval of the Settlement, Ashmore and the Trustee jointly move by letter motion for Ashmore to be substituted as Plaintiff in this action, ECF No. 264, and Defendants move to dismiss this action on judicial estoppel grounds, ECF No. 268. Ashmore also moves for reconsideration of the 2016 Order, ECF No. 276, and Defendants move to strike the motion for reconsideration, ECF No. 280.  For the reasons stated below, the motion to substitute is GRANTED, the motion to dismiss is GRANTED, and the motion for reconsideration and motion to strike are DENIED as moot.

## BACKGROUND

I.    The Bankruptcy Petition

In support of the Petition, Ashmore submitted various documents required by the Bankruptcy Code, *see* 11 U.S.C. § 521(a)(1), including schedules of assets and liabilities (the "Schedules") and a statement of financial affairs (the "SOFA").  *See generally* Petition.  The Schedules listed a total of $2,840 in assets and $296,347 in liabilities.  *Id.* at 34.

Ashmore did not list this action as an asset on any of the Schedules, including Schedule B, which directs the debtor to list "all personal property of the debtor of whatever kind," and to disclose "contingent and unliquidated claims of every nature" and "[o]ther personal property of any kind not already listed."  *Id.* at 10–12.  Instead, Ashmore listed this action in response to

2

Question 4 of the SOFA, which directs the debtor to list "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." *Id.* at 38.  In the SOFA, Ashmore describes this action as an "[e]mployment" proceeding pending in the Southern District of New York, and includes the case caption and docket number.  *Id.*  Ashmore amended the Petition to include this action on Schedule B on July 25, 2017.  Ashmore Mem. at 18, ECF No. 277; *see* Bankr. Docket No. 125, at 23–24, ECF No. 270-2 (noting the filing of Ashmore's Amended Petition).[2]

On June 19, 2013, Ashmore moved to dismiss the Bankruptcy Action, stating that although he had insufficient assets to pay his creditors at the time he filed the Petition, "[u]pon information and belief, and due to intervening matters, I will be now able to meet my obligations and thus ask for the petition to be dismissed."  June 19, 2013 Certification ¶ 3, ECF No. 270-9.  Ashmore added that "[his] filing was a mistake."  *Id.*  In response to an inquiry from the Trustee, Ashmore wrote in a letter dated June 21, 2013 that this action was "near the end of an enlarged discovery period," that he was "hopeful that a favorable conclusion is near," and that he believed he would now "have the ability to satisfy [his] creditors in full."  June 21, 2013 Letter, at 2, ECF No. 270-4.  In a letter to the Bankruptcy Court dated July 17, 2013, the Trustee opposed Ashmore's motion to dismiss the Bankruptcy Action, stating that "it is now apparent" that Ashmore had filed a "substantial whistleblower lawsuit" that "does not appear as a potential asset on the petition."  July 17, 2013 Letter, at 1–2, ECF No. 270-4.  According to the Trustee, "the best course of action would be for the Trustee to retain counsel representing the debtor in

---

[2] Documents from the Bankruptcy Action that are not filed as exhibits in this action are available in *In re Ashmore*, No. 13-17450 (Bankr. D.N.J.).  The Court's citations to the public docket in the Bankruptcy Action refer only to information that is available on the public docket, which is attached as Exhibit 2 to Defendants' motion to dismiss.

the whistleblower action, with any settlement of judgment to be administered through [the Bankruptcy Court]." *Id.* at 2.  On July 23, 2013, the Bankruptcy Court denied Ashmore's motion to dismiss.  July 23, 2013 Tr. at 7, ECF No. 270-11.

In a letter dated September 16, 2013 (the "Letter Agreement"), the Trustee stated that she was "willing to close the bankruptcy case and not administer the asset at this time" in order "to allow [Ashmore] and [his] present counsel to continue with the litigation without any delay or jeopardy."  Letter Agreement, ECF No. 270-14.  The Trustee stated, however, that she would only do so if: (1) Ashmore agreed to the reopening of the Bankruptcy Action "should the [T]rustee determine that the collection on the litigation is sufficient to provide a distribution to unsecured creditors"; and (2) Ashmore would "not [] assert that the litigation has been abandoned by the [T]rustee pursuant to § 554(c) of the Bankruptcy Code."  *Id.*  Ashmore indicated his agreement to the Trustee's terms by returning a signed copy of the letter.  *Id.* Neither Ashmore nor the Trustee sought the Bankruptcy Court's approval of the Letter Agreement or filed it on the Bankruptcy Court's docket.  *See* Ashmore Mem. at 10.

The next day, September 17, 2013, the Trustee filed a Report of No Distribution with the Bankruptcy Court which stated that the estate had no assets to distribute.  Bankr. Docket, at 5–6. On November 18, 2013, in light of the Report of No Distribution, the Bankruptcy Court issued an order granting Ashmore a bankruptcy discharge.  Discharge of Debtor, ECF No. 270-16.  On November 22, 2013, the Bankruptcy Court closed the Bankruptcy Action and issued a Final Decree stating that Ashmore's estate had been fully administered without any assets being administered to Ashmore's creditors.  Final Decree, ECF No. 270-18.

II.    The Reopening of the Bankruptcy Action

On September 22, 2015, the Trustee moved to reopen the Bankruptcy Action.  First

Motion to Reopen, ECF No. 270-20.  In an affidavit accompanying her motion, the Trustee stated that she had been informed by Defendants that extensive settlement discussions had taken place in this action and that a summary judgment motion was pending before the Court. Edwards Aff. ¶¶ 6–7, ECF No. 270-20.  The Trustee, therefore, sought "an [o]rder reopening the . . . bankruptcy case to allow for the administration of this potential asset." *Id.* ¶ 8.  On September 23, 2015, the Court issued its ruling on Defendants' motion for summary judgment, granting summary judgment for Defendants on Ashmore's breach of contract claim, but allowing his Sarbanes-Oxley claim to proceed to trial.  ECF No. 148.  On September 28, 2015, Defendants filed a letter advising the Court of the Trustee's motion to reopen the Bankruptcy Action, and the Court stayed all proceedings and deadlines.  ECF Nos. 151, 165.

On October 27, 2015, the Trustee withdrew her motion to reopen, Bankr. Docket No. 31, at 7, and the Court lifted the stay and set a trial date, ECF No. 171.  In a letter to the Court dated October 30, 2015, the Trustee explained that she had withdrawn her motion because it "had seemed to create confusion as to who was in a position to prosecute" this action, and it was "[the Trustee's] intent at all times that [Ashmore] would prosecute [this action] against his former employer as the Plaintiff and that his bankruptcy estate would retain an interest in the proceeds of any recovery."  Oct. 30, 2015 Letter, at 2–3, ECF No. 185.

On November 23, 2015, Defendants filed a motion to dismiss this action on the grounds that Ashmore lacked standing and that the doctrine of judicial estoppel barred Ashmore from prosecuting this case.  ECF No. 188.  Ashmore filed opposition papers on December 7, 2015. Ashmore First MTD Opp., ECF No. 194.  In his opposition papers, Ashmore argued that the Trustee had abandoned her interest in this action, giving him standing to prosecute this case.  *Id.* at 31–33.

On December 16, 2015, the Trustee renewed her motion to reopen the Bankruptcy Action (the "Second Motion to Reopen"), ECF No. 197-1, on the ground that Ashmore's argument that the Trustee had "abandoned any interest" in this action, made in opposition to Defendants' motion to dismiss this action, was "contrary to [the Trustee's] September [1]6, 2013 letter agreement with [Ashmore]," Dec. 16, 2015 Certification ¶¶ 11–12, ECF No. 197-1.  The Trustee explained that she was renewing her motion to reopen the Bankruptcy Action out of a concern "that if the whistleblower suit is dismissed due to a lack of standing a valuable asset will be lost for both [Ashmore] and his creditors."  *Id.* ¶ 11.  On December 21, 2015, the Court stayed this action in light of the Second Motion to Reopen.  ECF No. 200.  Ashmore opposed the Second Motion to Reopen on March 7, 2016.  Bankr. Docket No. 60, at 12.

On March 15, 2016, over Ashmore's opposition, the Bankruptcy Court granted the Second Motion to Reopen.  ECF No. 270-23.  On March 29, 2016, the Trustee issued a notice that, because of the pendency of this action, the Bankruptcy Action had changed from a "no asset" case to an "asset" case.  ECF No. 270-24.  The next day, the Trustee issued a separate notice asking Ashmore's creditors to file proofs of claim on the bankruptcy estate by June 27, 2016.  ECF No. 270-25.  Ashmore's creditors ultimately filed proofs of claim totaling $50,356.88.  *See* Stipulation and Consent Order, at 6.

III.     Dismissal of Ashmore from This Action

On May 9, 2016, the Court granted Defendants' motion to dismiss this action on the ground that Ashmore lacked standing because this action was the property of the bankruptcy estate.[3]  2016 Order, at 8–9.  In granting the motion, the Court rejected Ashmore's argument that

---

[3] In a footnote, the Court also summarily "decline[d] to exercise its discretion" to dismiss the case on judicial estoppel grounds.  2016 Order, at 8 n.6.

he had standing because the Trustee had abandoned this action to him under 11 U.S.C. § 554(c).

The Court concluded that the Trustee had not abandoned this action to Ashmore because, by

failing to list this action on the Schedules in the Petition, Ashmore had failed to properly

schedule this action under 11 U.S.C. § 521(a)(1), which is required to establish abandonment

under § 554(c). *Id.* at 6–8. Recognizing, however, that "outright dismissal of the action would

not protect the creditors of the bankruptcy estate," the Court declined to close the case, and

instead stayed the action to provide the Trustee an opportunity to move to be substituted as

Plaintiff. *Id.* at 8–9. The Trustee so moved in August 2016, ECF No. 241, and the Court granted

her motion in October 2016, ECF No. 247.

IV.    <u>Settlement of the Bankruptcy Action</u>

In a letter dated July 17, 2017, the Trustee notified the Court that she and Ashmore had

agreed to the Settlement, subject to the approval of the Bankruptcy Court. July 17, 2017 Letter,

ECF No. 257. The Settlement provided that Ashmore would pay the Trustee the total amount of

all allowed claims, $50,356.88, plus all administrative expenses in the Bankruptcy Action. *Id.*

In return, the Trustee would abandon the property of the estate, including this action, to Ashmore

under 11 U.S.C. § 554(a). *Id.*

On July 7, 2017, Defendants, aware that Ashmore was negotiating with the Trustee to

purchase control of this action, filed a pre-motion letter requesting permission to file a renewed

motion to dismiss on judicial estoppel grounds. ECF No. 248. On July 11, 2017, Ashmore filed

a pre-motion letter requesting permission to move for reconsideration of the 2016 Order based on

new Second Circuit authority. ECF No. 250. On July 21, 2017, the Court issued an order

denying both requests, and instructed the parties that "[i]f the settlement is approved, CGI may

then raise its arguments about judicial estoppel, law of the case, and standing. If the settlement is

7

not approved, Ashmore may then move for reconsideration of the [2016 Order]."  *Id.* at 2.

On October 4, 2017, the Bankruptcy Court approved the Settlement.  ECF No. 264-1.  In light of the Bankruptcy Court's approval of the Settlement, Ashmore and the Trustee now move jointly by letter motion to substitute Ashmore as Plaintiff in this action, and Defendants move to dismiss this action on judicial estoppel grounds.  Ashmore also moves for reconsideration of the 2016 Order, and Defendants move to strike the motion for reconsideration.

**DISCUSSION**

I.    Legal Standards

A.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon in bringing suit.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  A party may, therefore, raise the defense of judicial estoppel on a motion to dismiss "where the basis for that defense is set forth on the face of the complaint or established by public record."  *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 620

(S.D.N.Y. 2006).

      B.  Judicial Estoppel

     "The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).  In the bankruptcy context, "judicial estoppel will 'prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy.'" *BPP Illinois, LLC v. Royal Bank of Scot. Grp. PLC*, 859 F.3d 188, 192 (2d Cir. 2017) (quoting *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010)).

     "[T]he exact criteria for invoking judicial estoppel will vary based on 'specific factual contexts.'" *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)).  Judicial estoppel will generally apply where (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party's former position has been adopted in some way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage or impose an unfair detriment on the party seeking estoppel.  *New Hampshire*, 532 U.S. at 750–51; *accord DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010).  In addition, because "the purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment, the Second Circuit limits judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 598 (S.D.N.Y. 2013) (internal alterations, quotation marks, and citations omitted).

9

II.    Analysis

     A.   Motion to Substitute

Ashmore and the Trustee move jointly to substitute Ashmore as Plaintiff in this action in light of the Trustee's abandonment of this action to Ashmore in the Settlement pursuant to 11 U.S.C. § 554(a). ECF No. 264. When the trustee in a bankruptcy action abandons property pursuant to § 554(a), title to that property reverts back to the debtor. *See In re Magee*, 444 B.R. 254, 260 (Bankr. S.D.N.Y. 2011). Here, there is no dispute that the Trustee abandoned this action to Ashmore pursuant to § 554(a) in the Settlement. Defendants argue, nonetheless, that the Court should deny Ashmore's motion to substitute based on equitable considerations—that Ashmore engaged in misconduct during the Bankruptcy Action in order to procure the Trustee's abandonment of the litigation. Defs. Substitution Opp. at 5–10, ECF No. 271. The Court will consider the equities in connection with its judicial estoppel analysis. Because the Trustee has abandoned this action under § 554(a), however, this action is now Ashmore's property. Accordingly, the motion to substitute Ashmore as Plaintiff in this action is GRANTED.

     B.   Motion for Reconsideration and Motion to Strike

Ashmore's motion for reconsideration and Defendant's motion to strike the motion for reconsideration both bear on Ashmore's standing to prosecute this case. By granting the motion to substitute Ashmore as Plaintiff in this action, however, the Court has restored his standing to prosecute this case. The motion for reconsideration and the motion to strike are, therefore, DENIED as moot.

     C.   Motion to Dismiss

Defendants move to dismiss, arguing that judicial estoppel bars this action because Ashmore failed to list it on the Schedules in the Petition and received a discharge from the

Bankruptcy Court in November 2013 without any assets being distributed.  Defs. Mem. at 28–41,
ECF No. 269.  The Court agrees.

As an initial matter, the parties dispute whether the law of the Second Circuit or the Third
Circuit—where the Bankruptcy Action took place—should apply to the judicial estoppel
analysis.  Ashmore argues that Third Circuit law should apply based on the Second Circuit's
recent decision in *BPP Illinois*, 859 F.3d 188.  Ashmore Mem. at 24–25.  Ashmore reads *BPP
Illinois* too broadly.  In that case, the Second Circuit faced similar circumstances to those at issue
here:  The plaintiff in a fraudulent inducement action filed in this district failed to list that lawsuit
on its schedule of assets in a bankruptcy proceeding that was conducted in Texas, and the
defendants moved to dismiss the fraudulent inducement action on judicial estoppel grounds.
*BPP Illinois*, 859 F.3d at 192.  The court applied Second Circuit law to the judicial estoppel
analysis.  *See id.* at 192–94.  However, when considering if the plaintiff had taken inconsistent
positions in connection with the first factor of the judicial estoppel analysis, the Second Circuit
"look[ed] to Fifth Circuit law for the limited purpose of deciding whether [the plaintiff's] failure
to list a [fraudulent inducement] claim in the bankruptcy proceeding is equivalent to an assertion
that [the plaintiff] did not have such a claim."  *Id.* at 192.

At the time that the plaintiff filed its schedule of assets, it had not yet filed the fraudulent
inducement action.  *Id.* at 191, 193.  Still, the Second Circuit concluded that, under Fifth Circuit
law, the plaintiff possessed sufficient information about the fraudulent inducement action as a
potential claim such that the failure to list it in the schedule of assets was equivalent to a
representation that the cause of action did not exist.  *Id.* at 192–94.  The court, therefore,
affirmed the district court's application of judicial estoppel on the ground that the plaintiff had
taken a clearly inconsistent position by prosecuting the fraudulent inducement action in federal

court after the bankruptcy proceeding closed.  *Id.*

The Court will, therefore, apply Second Circuit law to the judicial estoppel analysis, but will look to Third Circuit law for the sole purpose of determining whether Ashmore's conduct in the Bankruptcy Action constituted an assertion that this action did not exist.

### 1.  Inconsistent Positions

The first factor in the judicial estoppel analysis is whether Ashmore's position in this proceeding is clearly inconsistent with a position he took in the Bankruptcy Action.  *DeRosa*, 595 F.3d at 103.  Here, the relevant inquiry is whether Ashmore took an inconsistent position by asserting that this action did not exist as an asset in the Bankruptcy Action.  *See Azuike*, 962 F. Supp. 2d at 599 ("[P]laintiff's present position—that he has a claim for discrimination, harassment, and retaliation against defendants based on injuries suffered during his pre-petition employment with defendants—is clearly inconsistent with his representation to the Bankruptcy Court that no such claim existed.").  As discussed above, the Court will apply Third Circuit law in addressing this question.

> In the Third Circuit, as in other Circuits, a party seeking bankruptcy protection has
>
> an affirmative duty of full disclosure.  Section 521 [of the Bankruptcy Code] requires the debtor to file with the court "a schedule of assets and liabilities . . . and a statement of the debtor's financial affairs."  The schedule must disclose, *inter alia*, "contingent and unliquidated claims of every nature" and provide an estimated value for each one.

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (ellipsis in original) (first quoting 11 U.S.C. § 521(a); and then quoting Official Forms, Schedule B, App. 41); *see also Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010) (describing the requirements of Section 521).  The Third Circuit has explained that "[t]hese disclosure requirements are crucial to the effective functioning of the federal bankruptcy system[] [b]ecause

12

creditors and the bankruptcy court rely heavily on the debtor's disclosure statement." *Ryan Operations*, 81 F.3d at 362.  It is well settled that the duty to disclose "contingent and unliquidated claims of every nature" in the schedule of assets includes pending lawsuits for money damages in which the bankruptcy petitioner is a plaintiff.  *Id.*; *accord Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003).

There is no dispute here that Ashmore failed to disclose this action in Schedule B until July 25, 2017, four years after the Petition was filed, in violation of the Bankruptcy Code's requirements.  Moreover, unlike *BPP Illinois*, this action was already pending when Ashmore filed the Petition, meaning there is no issue here as to whether Ashmore had sufficient information about his claims in this action at the time he filed the Petition to give rise to an obligation to disclose it.  Instead, Ashmore argues that a single Third Circuit case, *In re Kane*, 628 F.3d 631 (3d Cir. 2010), mandates the conclusion that his representations to the Bankruptcy Court were sufficient to disclose the existence of this action.

In *Kane*, the plaintiff failed to disclose a pending claim for alimony and equitable distribution arising out of a divorce on her schedule of assets in a bankruptcy proceeding, but listed other assets and liabilities related to the divorce in the schedules, and also listed the fact that she had pending divorce litigation in the SOFA.  *Id.* at 634.  At a meeting of bankruptcy creditors pursuant to 11 U.S.C. § 341, held six weeks after she filed her bankruptcy petition, there was "extensive discussion" of the alimony and equitable distribution claim.  *Id.* at 639.  Based on the disclosures made at the § 341 meeting, the trustee made an on-the-record finding that "I'm satisfied that the Debtor's disclosure was sufficient, that there are certain omissions that she might have made, they're negligible." *Id.* at 635 (citation omitted).  One week after the meeting, the plaintiff amended her petition to disclose the alimony and equitable distribution

13

claim. *Id.* at 635. Considering the plaintiff's disclosures "in context," *id.* at 639 (quoting *Ryan Operations*, 81 F.3d at 362), the Third Circuit concluded that even though the plaintiff initially failed to list the alimony and equitable distribution claim in her schedule of assets, the district court did not err in concluding that she made a sufficient disclosure of the claim to preclude the application of judicial estoppel, *id.* at 640.

Ashmore argues that the facts of this case hew closely to those in *Kane* and, therefore, under Third Circuit law, his failure to list this action in the Schedules in the Petition did not constitute an assertion that this action did not exist. Ashmore Mem. at 26–27. The Court disagrees. As an initial matter, district courts in the Third Circuit since *Kane* have held that the failure to list a pending action in the schedule of assets in a bankruptcy case constitutes an assertion that the action does not exist. *See, e.g.*, *Bartel ex rel. McQueen v. Charles Kurz & Co.*, 110 F. Supp. 3d 579, 587 (E.D. Pa. 2015) ("By failing to include his asbestos claims as an asset in his bankruptcy filings, Mr. McQueen represented to the Bankruptcy Court that such an asset did not exist."); *Giordano v. Saxon Mortg. Servs., Inc.*, Civ. Action No. 12-7937, 2013 WL 12158378, at *7 (D.N.J. Oct. 31, 2013) (holding that the plaintiffs took "two positions [that] are irreconcilably inconsistent" because they "misled the bankruptcy court by failing to disclose the present cause of action in their schedule of assets").

In addition, the factual similarities between *Kane* and this case crumble upon close examination. To be sure, Ashmore, like the plaintiff in *Kane*, disclosed this action in the SOFA, but not on the schedule of assets. The similarities between the two cases, however, end there. First, in the Bankruptcy Action, the Trustee made no on-the-record findings to the Bankruptcy Court about the sufficiency of Ashmore's disclosure of this action. Conversely, in *Kane*, the trustee's on-the-record finding that the plaintiff had sufficiently disclosed the alimony and

14

equitable distribution claim weighed heavily in the district court's conclusion that the plaintiff's disclosures were sufficient. *See Kane v. Kane*, Civ. Action No. 08-5633, 2009 WL 3208653, at *7 (D.N.J. Sept. 30, 2009) ("Importantly, the Bankruptcy Court relied upon the Trustee's position on the record that Ms. Kane's disclosures were sufficient."). The Third Circuit, in turn, relied on this fact in affirming the district court's decision. *Kane*, 628 F.3d at 639–40. Second, there is no evidence here that Ashmore disclosed this action as an asset at the § 341 meeting of creditors;[4] that creditors were otherwise notified of the existence of this action until the Bankruptcy Action was reopened in 2016; or that Ashmore properly scheduled this action until the filing of his Amended Schedule B on July 25, 2017, four years after the Petition was filed. This stands in stark contrast with the "extensive discussion" of the alimony and equitable distribution claim with creditors at the § 341 meeting in *Kane*, as well as the plaintiff's filing of her amended petition scheduling the claim as an asset one week after the § 341 meeting. *Id.* at 635, 639.

In addition, Ashmore's conduct at several stages of the Bankruptcy Action and this action suggests an effort to conceal the existence of this action as an asset and shield it from his creditors. First, when Ashmore moved to dismiss the Bankruptcy Action in June 2013, he did not reveal the existence of this action, citing only to "intervening matters" that led him to believe

---

[4] Ashmore, citing to the factual "recitals" in the Stipulation and Consent Order entered by the Bankruptcy Court approving the Settlement, argues that he disclosed this action at the § 341 meeting. Ashmore Mem. at 6; *see* Stipulation and Consent Order, at 3. However, the Bankruptcy Court attached a rider to the Stipulation and Consent Order stating that "the recitals in this Stipulation and Consent Order . . . are not binding upon CGI, nor shall [they] have or be deemed to have any preclusive effect with respect to CGI in [this] action." *Id.* at 7. The Court will not, therefore, consider the facts asserted therein as evidence in this case. Ashmore also cites a sworn certification of the Trustee dated May 22, 2013; however, the certification merely refers to the need to reschedule the § 341 meeting because of pending depositions in a matter in the Southern District of New York. May 22, 2013 Edwards Certification ¶ 3, ECF No. 195. The certification does not assert that Ashmore discussed the nature of this action, revealed that he was Plaintiff in this action, or otherwise indicated that this action was an asset of his estate at the § 341 meeting.

that "I will now be able to meet my obligations."  June 19, 2013 Certification ¶ 3.  Ashmore only disclosed the existence of the action to the Trustee after she inquired about the matters supporting the motion to dismiss, *see* June 21, 2013 Letter, at 2, and then orally disclosed it to the Bankruptcy Court only after the Trustee mentioned it in her opposition to Ashmore's motion to dismiss, *see* July 17, 2013 Letter, at 1–2; July 23, 2013 Tr. at 2–4.  Second, Ashmore and the Trustee did not disclose the Letter Agreement to the Bankruptcy Court, *see* Ashmore Mem. at 10, even though it formed the basis of the Trustee's Report of No Distribution, *see* Bankr. Docket, at 5–6, which led the Bankruptcy Court to discharge Ashmore's debts without the distribution of any assets, *see* Discharge of Debtor.  Third, in 2016, Ashmore opposed the Trustee's Second Motion to Reopen, Bankr. Docket No. 60, at 12, and argued in this action that the Trustee had abandoned this action to him when the Bankruptcy Action was closed in 2013, Ashmore First MTD Opp. at 31–33, even though the Letter Agreement explicitly prohibited Ashmore from making this argument, *see* Letter Agreement.  Ashmore's conduct is, therefore, consistent with an intent to shield this action from his creditors' reach.[5]

The Court is mindful that, prior to the reopening of the Bankruptcy Action in 2016, Ashmore was proceeding *pro se*.  Schedule B requires a bankruptcy petitioner to list "contingent and unliquidated claims," but does not make explicit that this includes pending lawsuits.  *See*

---

[5] To the extent Ashmore asserts a "good faith" defense to the application of judicial estoppel, Ashmore Mem. at 29, that defense does not apply here.  The "failure to disclose assets will only be deemed inadvertent or due to mistake when either the debtor has [1] no knowledge of the claims or [2] no motive to conceal the claims." *Azuike*, 962 F. Supp. 2d at 599 (alterations in original) (quoting *Ibok v. Siac-Sector Inc.*, No. 05 Civ. 6584, 2011 WL 293757, at *7 (S.D.N.Y. Feb. 2, 2011), *adopted*, 2011 WL 979307 (S.D.N.Y. Mar. 14, 2011)).  First, Ashmore does not assert a lack of knowledge, nor could he, given that this action had been pending for nearly two years when he filed the Petition.  Second, Ashmore had a clear motive to conceal this action from creditors in order to "put any recovery on the claim beyond the reach of his creditors." *Id.* at 600.  As discussed above, much of his conduct in the Bankruptcy Action is consistent with such a motive.

Petition at 11.  It is reasonable, given the lack of clarity, that a *pro se* litigant might not understand the obligation to list a pending lawsuit in Schedule B.  However, Ashmore's *pro se* status does not excuse his efforts, discussed above, to conceal this action from the Bankruptcy Court and his creditors.  Nor does it excuse his failure to list the action on Schedule B until July 25, 2017, as he retained counsel in the bankruptcy proceeding when it was reopened in March 2016.  *See* Bankr. Docket Nos. 30, 39, 72, 74, at 7–8, 14.

The Court, therefore, concludes that Ashmore's failure to list this action in Schedule B and his subsequent efforts to conceal the existence of this action constitute an assertion that this action did not exist under Third Circuit law.  Accordingly, Ashmore's continued prosecution of this action is clearly inconsistent with his representations in the Bankruptcy Action.

### 2.   Adoption

The second factor in the judicial estoppel analysis is whether the Bankruptcy Court adopted Ashmore's position that this action did not exist as an asset.  *DeRosa*, 595 F.3d at 103. The Court concludes that it did.

On November 18, 2013, following the Trustee's Report of No Distribution, the Bankruptcy Court discharged Ashmore's debts without the distribution of any assets pursuant to 11 U.S.C. § 727.  *See* Discharge of Debtor.  On November 22, 2017, the Bankruptcy Court closed Ashmore's case.  *See* Final Decree.  It is well established in the Second Circuit that a discharge of debts under § 727, together with the closing of a bankruptcy case without the distribution of an asset, constitutes an adoption of the position that the asset does not exist.  *See, e.g.*, *Mintz v. Transworld Sys.*, No. 14 Civ. 7044, 2016 WL 4367221, at *5 (E.D.N.Y. May 16, 2016) ("[T]he Bankruptcy Court adopted Plaintiff's inconsistent position when it granted him a discharge pursuant to 11 U.S.C. § 727 . . . ."); *Azuike*, 962 F. Supp. 2d at 599 ("[T]he Bankruptcy

17

Court adopted plaintiff's representation that such a claim did not exist when it discharged his debts and closed the bankruptcy case."); *Ibok*, 2011 WL 293757, at *7 ("The Bankruptcy Court, in discharging [plaintiff] and closing his case, adopted [his] stated position that he did not have any outstanding legal claims."). Accordingly, the Bankruptcy Court adopted Ashmore's position that this action did not exist as an asset.

### 3.   Unfair Advantage

The third factor in the judicial estoppel analysis is whether the party that asserts an inconsistent position derives an unfair advantage or imposes an unfair detriment on the party invoking estoppel. *DeRosa*, 595 F.3d at 103. The Second Circuit does not require district courts to consider this factor "in all circumstances." *See Adelphia Recovery Tr.*, 748 F.3d at 116. Regardless, the Court concludes that Ashmore gained an unfair advantage through his conduct in the Bankruptcy Action.

By failing to list this action in Schedule B and subsequently concealing the Letter Agreement from the Bankruptcy Court, Ashmore obtained a discharge of more than $290,000 of debt without any distribution to his creditors. *See* Petition, at 34; Discharge of Debtor. Before the Bankruptcy Action was reopened in 2016, this discharge enabled Ashmore to prosecute this action without the Trustee's involvement for nearly three years. Ashmore then opposed the Trustee's Second Motion to Reopen the Bankruptcy Action in contravention of the Letter Agreement, seeking to prevent his creditors from deriving any benefit from the existence of this action. Although the Bankruptcy Court reopened the case over Ashmore's opposition, Ashmore's creditors ultimately filed proofs of claim worth a total of $50,000, a fraction of his original debt.[6] Stipulation and Consent Order, at 6. Ashmore's failure to disclose this action as

---

[6] Ashmore points out that $138,000 of his debt is attributable to student loans, and was not, therefore,

an asset, therefore, successfully prevented the Trustee from "pursuing his claim for the benefit of his creditors while preserving his ability to recover on the claim himself." *Azuike*, 962 F. Supp. 2d at 599. Accordingly, Ashmore derived an unfair advantage from his failure to disclose this action as an asset to the Bankruptcy Court.

> 4. Judicial Integrity

Finally, the Second Circuit requires a court invoking judicial estoppel to find that doing so is necessary to protect judicial integrity. *Id.*; *accord DeRosa*, 595 F.3d at 103. As discussed earlier, "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *Ibok*, 2011 WL 293757, at *6 (quoting *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)). Here, Ashmore failed to list this action on Schedule B until nearly four years after he first filed the Petition, attempted to conceal this action when he moved to dismiss the Petition in 2013, failed to disclose the Letter Agreement to the Bankruptcy Court, and resisted the Trustee's efforts to reopen the action when she discovered that he had argued in this action that she had abandoned this action. Allowing a debtor to engage in such conduct "would only diminish [his] incentive to provide a true and complete disclosure of [his] assets to the bankruptcy courts." *Azuike*, 962 F. Supp. 2d at 599 (quoting *Vanderheyden v. Peninsula Airport Comm'n*, No. 12 Civ. 46, 2013 WL 30065, at *14 (E.D. Va. Jan. 2, 2013)). The Court, therefore, concludes that invoking judicial estoppel here is necessary to protect judicial integrity.

Because each of the factors in the judicial estoppel analysis supports dismissal of this action, Defendants' motion to dismiss is GRANTED.

---

discharged in the Settlement. Ashmore Mem. at 33. Ashmore does not provide a citation to support this proposition, but even if true, it does not account for the approximately $100,000 of remaining debt on which creditors did not file proofs of claim.

**CONCLUSION**

For the reasons stated above, Ashmore's motion to substitute is GRANTED, Defendants'

motion to dismiss is GRANTED, and Ashmore's motion for reconsideration and Defendants'

motion to strike are DENIED as moot.

The Clerk of Court is directed to terminate the motions at ECF Nos. 268 and 276, and

close the case.

SO ORDERED.

Dated: August 10, 2018
       New York, New York

_____
ANALISA TORRES
United States District Judge

20