1:11-cv-08611-AT

18-2392-cv
Ashmore v. CGI Group

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2018

(Argued: March 6, 2019     Decided: May 8, 2019)

Docket No. 18-2392-cv

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 30, 2019

BENJAMIN J. ASHMORE, SR.,
*Plaintiff- Appellant,*

BARBARA A. EDWARDS, Chapter 7 Trustee of the Bankruptcy Estate of Benjamin
Jeffrey Ashmore,
*Plaintiff,*

— v. —

CGI GROUP, INC., CGI FEDERAL, INC.,

*Defendants-Appellees.*[*]

---

[*] The Clerk of Court is respectfully directed to amend the caption as listed above.

Case 11-2932, Document 122-1, 05/30/2019, 2573096, Page2 of 51

B e f o r e:

> JACOBS and LYNCH, *Circuit Judges*, and HALL, *District Judge*.[**]

Plaintiff-Appellant Benjamin J. Ashmore, Sr., instituted this whistleblower action under Section 806 of the Sarbanes-Oxley Act against defendants-appellees CGI Group, Inc. and CGI Federal, Inc. (collectively, "CGI"), complaining that he was unlawfully fired in retaliation for his complaints about and objections to an allegedly fraudulent scheme developed by CGI's executives. The United States District Court for the Southern District of New York (Analisa Torres, *Judge*) held that Ashmore's Sarbanes-Oxley claims survived summary judgment, but later dismissed Ashmore as a plaintiff for lack of standing due to his parallel bankruptcy proceedings. After Ashmore's bankruptcy case was closed, he moved to be substituted in as the proper party-in-interest. The district court granted his motion but then dismissed the case in its entirety on the grounds of judicial estoppel. Because we find that the district court exceeded its discretion in invoking the judicial estoppel doctrine, we VACATE that judgment and REMAND for further proceedings. Additionally, we AFFIRM the district court's grant of partial summary judgment to CGI on Ashmore's state-law breach of contract claim, and conclude that the district court's order dismissing Ashmore as a plaintiff is rendered moot by virtue of later developments.

---

> ROBERT L. HERBST, Herbst Law PLLC, New York, New York, *for Plaintiff-Appellant*.
>
> ZACHARY D. FASMAN (Andrew M Sherwood, *on the brief*), Proskauer Rose, LLP, New York, New York, *for Defendants-Appellees*.

---

[**] Judge Janet C. Hall, of the United States District Court for the District of Connecticut, sitting by designation.

2

Case 15-2352, Document 122-2, 05/30/2019, 2570049, Page3 of 51

GERARD E. LYNCH, *Circuit Judge*:

This case requires us to consider the proper application, in the context of a *pro se* debtor's bankruptcy court filings, of judicial estoppel, a doctrine developed to prevent litigants who "play[] fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000). At issue here is whether a debtor whose initial bankruptcy filings do not properly list his pending district court litigation as an "asset," but who elsewhere disclosed that lawsuit, both in his initial filings and to the trustee and bankruptcy court on numerous subsequent occasions, has concealed the litigation from the bankruptcy court such that he should be prevented from proceeding in district court with that suit. We conclude that he should not, and that the district court erred when it applied judicial estoppel to dismiss plaintiff's suit.

In addition, we find that the district court properly granted summary judgment to the defendants on plaintiff's pendent state-law contract claim. Accordingly, we VACATE the judgment of the district court in part, AFFIRM in part, and REMAND the case to the district court for further proceedings.

## BACKGROUND

This case arises out of two separate proceedings — one, a lawsuit filed by Benjamin J. Ashmore, Sr., under Section 806 of the Sarbanes-Oxley ("SOX") Act in the Southern District of New York ("SDNY") in November 2011, and the other, a voluntary *pro se* Chapter 7 bankruptcy case filed in the Bankruptcy Court for the District of New Jersey in April 2013. At issue in this appeal is whether Ashmore made inconsistent assertions in the two proceedings such that his SDNY case should be dismissed on judicial estoppel grounds.

## I. Ashmore's Sarbanes-Oxley Action

On November 28, 2011, Ashmore filed a whistleblower complaint in the Southern District of New York (Analisa Torres, *Judge*), in which he alleged that defendants CGI Group Inc. and CGI Federal Inc. (collectively, "CGI") had improperly terminated his employment in retaliation for various actions he took upon discovering that CGI was developing fraudulent schemes to generate business. According to Ashmore, CGI, a subcontractor for various public housing agencies, feared losing business due to a 2009 change in policy at the U.S. Department of Housing and Urban Development that would limit the number of projects any individual subcontractor could bid on. Ashmore asserted that he

4

raised objections to the legality of a proposal that would allow CGI to counter the

effects of the new rule by having employees enter bids through sham companies,

and later transfer any resulting contracts back to CGI. It is undisputed that the

alleged scheme was never implemented. Ashmore alleges that he was fired in

retaliation for his objections to and complaints about the fraudulent scheme.

In addition to his SOX claim, Ashmore brought a contract claim for a bonus

he claimed he was owed upon termination.

## II. Ashmore's Bankruptcy Action

On April 8, 2013, Ashmore electronically filed his Chapter 7 bankruptcy

petition in the Bankruptcy Court for the District of New Jersey. When a debtor

files for bankruptcy, he or she is required to fill out a series of forms and

schedules. At the time of Ashmore's filing, these forms included ten schedules,

on which various assets and liabilities were to be listed, including, *inter alia*,

"Schedule A — Real Property," "Schedule B — Personal Property,"and a

"Statement of Financial Affairs."

At the time, the Schedule B form listed 34 specific categories of assets,

including, *inter alia*, cash, bank accounts, household goods and furnishings, furs,

annuities, patents, license, alimony, interests in partnerships, farm supplies, and

"[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." Joint Appendix ("J.A.") 96. It also contained a miscellaneous category for "[o]ther personal property of any kind not already listed." J.A. 97. It did not specifically ask the debtor to list lawsuits to which he or she was a party, although Ashmore does not now dispute that a lawsuit seeking damages for wrongful termination of employment is an asset that should have been listed on the Schedule B.[1] In contrast, the Statement of Financial Affairs ("SOFA") directed the debtor to answer a number of specific questions, including, *inter alia*, to disclose "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." J.A. 123.

While filling out the paperwork, Ashmore made the decision — or error — that gives rise to the present issue. Ashmore listed the SOX litigation on the SOFA; he wrote both the caption and docket number and indicated that the suit was employment-related. He did not, however, list it on his Schedule B.

---

[1] The Schedule B form was amended in 2015, and now specifically directs debtors to list all "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment." Appellant Br. 17.

6

Additionally, Ashmore was required to list his liabilities. He listed a total of $293,784 in unsecured debt, of which $135,878 was attributable to nondischargeable student loans and a significant portion was related to his recent divorce.

On April 10, 2013, Barbara Edwards was appointed interim trustee of the estate under Section 701 of the Bankruptcy Code. She continued to serve as trustee, under Section 702(d), for the remainder of the relevant period.

*A. Meeting of Creditors*

On May 13, 2013, as required by Bankruptcy Code Section 341(a), Edwards convened a meeting of creditors. It appears that no creditor attended this meeting. Ashmore attended, as required, and disclosed to Edwards that he would be unavailable for a future meeting due to a scheduled deposition in the Southern District of New York. The precise contours of how extensively the SOX litigation was discussed are not clear from the record, but it is undisputed by all that it was at least referenced at the May 13 meeting.[2]

---

[2] In a certification given in 2017, Edwards stated that Ashmore "testified regarding [the SOX] litigation at the first meeting of creditors." Joint Appendix ("J.A.") 1368. In addition, in a certification given on May 22, 2013, Edwards stated that Ashmore had a scheduling conflict due to "pending depositions in a Court action in the Southern District of New York District Court." J.A. 154. In its

7

*B. Motion to Dismiss Bankruptcy Case*

On June 19, 2013, Ashmore moved to dismiss his bankruptcy action. In his

motion papers he stated that "due to intervening matters," he would "now be

able to meet [his] obligations . . . . My filing was a mistake." J.A. 185. Ashmore

did not specify the nature of the "intervening matters." Edwards therefore asked

Ashmore to clarify, "so that both the Trustee and this Court can have a full

understanding of the relevant circumstances." J.A. 186.

Accordingly, on June 21, 2013, Ashmore sent an explanatory letter to which

he attached the SOX complaint. Edwards published the letter on the bankruptcy

---

August 10, 2018, Opinion, the court did not specifically address the credibility of
Edwards's statements, but noted that the 2013 certification did not "assert that
Ashmore discussed the nature of this action, revealed that he was Plaintiff in this
action, or otherwise indicated that this action was an asset of his estate at the
§ 341 meeting." *Edwards v. CGI Grp. Inc.*, No. 11-cv-8611(AT), 2018 WL 4043142, at
*7 n.4 (S.D.N.Y. Aug. 10, 2018). It further disregarded the recitals in the
Stipulation and Consent Order from the Bankruptcy Court that "Ashmore
disclosed the SOX action . . . in his testimony at the first meeting of creditors" as
the Consent Order had specifically noted that "the Stipulated Facts are not
binding upon CGI, nor shall the Stipulated Facts have or be deemed to have any
preclusive effect with respect to CGI in the SOX action (or otherwise)." *Id.*,
quoting J.A. 1103, 1107.  It thus concluded that there was "no evidence . . . that
Ashmore disclosed this action as an asset at the § 341 meeting of creditors." *Id.*, at
*7. We conclude that the fairest reading of the record is that Ashmore made some
disclosure at the meeting that was sufficient to put Edwards on notice of the SOX
litigation, but that did not qualify as a "full" discussion of the case.

court docket on July 17, 2013. She then proceeded to oppose dismissal of the bankruptcy petition, based on the fact that "it [was] now apparent that [Ashmore] is the plaintiff in a substantial whistleblower lawsuit," and that the lawsuit was a potential asset that she should administer on behalf of the estate. J.A. 186–87.

Judge Morris Stern held a hearing on the motion to dismiss on July 23, 2013, of which Ashmore's creditors were notified. The colloquy at the hearing focused on the SOX litigation. Ashmore testified at length about the whistleblower case, including a pending summary judgment motion made by CGI, emphasizing that "trial . . . is right around the corner," and that he therefore had "every reason to believe that the unsecured creditors in [his] bankruptcy petition have every ability to be paid." J.A. 194–95. He argued for dismissal so that he could retain control of the lawsuit. For her part, Edwards appears to have believed that the "whistleblower lawsuit . . . now appears to be ready to be settled" and that therefore the case should not be dismissed so that she could effect an "orderly distribution of the asset." J.A. 191.

After hearing argument from both sides, Judge Stern denied the motion, but notified Ashmore that if disagreements arose between Ashmore and

Edwards as to the management of the case or the appropriate settlement number, Ashmore could return to the bankruptcy court for assistance.

After denial of the motion, Ashmore notified the district court that he was involved in bankruptcy proceedings and requested a 30-day stay for Edwards to retain counsel and move to be substituted in as the party-in-interest. Judge Torres granted the stay on September 11, 2013.

*C. Letter Agreement*

On September 16, 2013, after ascertaining from Ashmore's counsel that the SOX action was not in fact nearing an imminent conclusion, Edwards reversed course, writing to Ashmore that she was "willing to close the bankruptcy case and not administer the asset at this time," so that Ashmore could "continue with the litigation without any delay or jeopardy." J.A. 200. Her proposal was conditioned upon Ashmore's willingness to consent to the reopening of the case and "not claim that the litigation was abandoned by [her] closing of the case," if "the amount [he] collect[s] from the litigation generates a significant distribution to unsecured creditors." J.A. 200. Ashmore promptly agreed to the terms by signing the letter and returning it to Edwards.

Under Section 554 of the Bankruptcy Code, property of the bankruptcy

estate can be abandoned in two distinct ways: (1) after notice and a hearing, "the

trustee may abandon any property of the estate that is burdensome to the estate

or that is of inconsequential value and benefit to the estate," § 554(a), and (2) by

operation of law, "any property scheduled under section 521(a)(1)[3] of this title

not otherwise administered at the time of the closing of a case is abandoned to

the debtor," § 554(c).

### D. Closing of Bankruptcy Case

On September 17, 2013, Edwards filed a "Report of No Distribution" with

the bankruptcy court in which she stated that "there is no property available for

distribution," and that the estate had thus been "fully administered" under

Federal Rule of Bankruptcy Procedure 5009. J.A. 36. She did not mention the SOX

litigation. The same day, she notified Judge Torres that she had closed the

bankruptcy proceeding and that the SOX litigation could thus "proceed outside

of the Bankruptcy Court jurisdiction." J.A. 201.

---

[3] Section 521(a)(1) requires the debtor, as part of his or her bankruptcy petition, to
file, *inter alia*, a schedule of assets and liabilities, a schedule of current income and
current expenditures, and a statement of the debtor's financial affairs.

Without any further mention of, or inquiry into, the SOX litigation, Judge Stern granted Ashmore's discharge on November 18, 2013, and notified the creditors on November 20, 2013. On November 22, 2013, the bankruptcy court issued a final decree that Ashmore's bankruptcy estate had been administered fully, that Edwards had been discharged, and that the case was closed. As of that time, Ashmore had listed $296,347 in debt to 29 creditors.

## III. The Intersection of the Two Cases

After this, the cases wound themselves into a tight spiral. We summarize the most notable aspects of the twin procedural histories below.

### A. Edwards Moves to Reopen the Bankruptcy Case

For approximately two years after the discharge decree, Ashmore's SOX case proceeded in the SDNY with no further reference to his standing to maintain the action or to his bankruptcy filings. In August 2015, however, CGI retained new counsel, who promptly contacted Edwards to inform her that Judge Torres was soon to issue a decision on their summary judgment motion and that there had been "substantial [settlement] offers . . . made by the CGI defendants, all of which were rejected by Mr. Ashmore." J.A. 478.

12

In response, Edwards immediately moved to reopen the bankruptcy case,

attaching the September 16, 2013 letter agreement (the "Letter Agreement") and

stating that she had been "advised by defense counsel in that case that . . .

settlement offers over $800,000.00 have been made." J.A. 483.

The next day, on September 23, 2015, Judge Torres denied CGI's motion for

summary judgment on the SOX claims, finding that genuine issues of material

fact existed.[4] CGI immediately moved to stay all proceedings pending the

resolution of Edwards's motion to reopen Ashmore's bankruptcy case. Judge

Torres granted the motion.

*B. Edwards Withdraws Motion to Reopen*

Upon learning that Judge Torres had stayed the SOX case, Edwards

withdrew her motion to reopen the bankruptcy proceedings and contacted the

SDNY with a clear statement of intent:

> It was [Edwards's] intent at all times that Mr. Ashmore
> would prosecute the Litigation against his former
> employer as the plaintiff and that his bankruptcy estate
> would retain an interest in the proceeds of any
> recovery. . . . Edwards . . . supports the decision to
> proceed to trial in light of the settlement offers that were
> discussed. . . . Edwards withdrew her motion to reopen

---

[4] Judge Torres granted summary judgment to CGI on Ashmore's contract claim,
however.

the bankruptcy case at this time because it had seemed
to create confusion as to who was in a position to
prosecute the Litigation.

J.A. 544–45.

She added that:

The timing of the defendants' concern for Mr.
Ashmore's creditors also is suspect. There was no
attempt to conceal Mr. Ashmore's Chapter 7 filing or the
bankruptcy estate's interest in any recovery in the
Litigation. . . . Ms. Edwards made an informed decision
to allow Mr. Ashmore to proceed with the Litigation.
There are no undisclosed promises between the parties.

J.A. 544–45.

In response, Judge Torres lifted the stay. CGI then moved to dismiss for

lack of standing, arguing that the case had not been abandoned to Ashmore to

prosecute.

### C. Edwards Attempts to Reopen for a Second Time

On December 16, 2015, in response to the developments in the SDNY,

Edwards made a second motion to reopen the bankruptcy case, stating that she

was "concerned that if the whistleblower suit is dismissed due to a lack of

standing a valuable asset will be lost for both the Debtor and his creditors."[5] J.A.

---

[5] Edwards listed as a secondary rationale that she had "learned since the filing of
the initial Motion to reopen this case that the debtor had an interest in a

647. She also contended that by arguing in his opposition papers to CGI's motion

to dismiss that Edwards had abandoned her interest in the SOX lawsuit,

Ashmore had violated the Letter Agreement.[6] In response, Judge Torres yet again

stayed proceedings in the SOX Action.

Meanwhile, back in the New Jersey Bankruptcy Court, Bankruptcy Judge

Vincent F. Papalia was assigned to the matter upon the death of Judge Stern. At a

hearing on February 16, 2016, Ashmore and Edwards submitted a proposed

consent order asking Judge Papalia to find, *inter alia*, that "Ashmore duly

disclosed [the SOX action] in his petition and in this case" and "[i]n accordance

with the terms of [the Letter Agreement], Ashmore, not his Chapter 7 Trustee,

---

settlement in connection with another pre-petition litigation against a former
employer, which was not previously disclosed in his Chapter 7 case." J.A. 648.
Ashmore recovered $8,553 on a 1.5% interest in a future sale of Clean Edison,
which Ashmore claimed he believed to be "worthless at the time he filed his
bankruptcy petition." J.A. 659.

[6] In Ashmore's opposition papers, he argued that the Letter Agreement "could
only prohibit [a claim that Edwards abandoned the action] in the New Jersey
Bankruptcy Court in the event that, at the conclusion of the [SOX] case, the
litigation generated a significant distribution to unsecured creditors, and the
former trustee determined to move to reopen the case. It certainly has no
application in this Court, on issues relating to standing to sue during the
pendency of this case, before its conclusion resulting in a recovery for plaintiff.
Indeed, to the contrary, the letter agreement effectively memorialized the
trustee's conferral of standing upon Ashmore until the end of the case." 1:11-cv-
08611-AT (S.D.N.Y.), ECF No. 194.

has been and remains the real and proper party-in-interest in the District Court
Litigation." J.A. 700. CGI objected, and Judge Papalia noted his discomfort with
making "legal and factual findings . . . on a motion to reopen that didn't ask for
that relief." J.A. 752.

At a second hearing on March 15, 2016, Judge Papalia, stating that he did
not "need to decide the abandonment issue on [a] narrow motion to reopen,"
issued a narrower factual finding, including, *inter alia*, a statement that though
the SOX action "was not scheduled on B as an asset," Ashmore had "list[ed] it on
the statement of financial affairs and also disclosed it at various points
throughout the bankruptcy case." J.A. 884, 887. He then reopened Ashmore's
bankruptcy case "for the limited purpose of administering the Sarbanes Oxley
Litigation and the CleanEdison settlement." J.A. 904. He further took care to note
that "[n]othing contained herein shall be considered a determination of the
estate's interest, if any, in the Sarbanes Oxley Litigation." J.A. 905.

Once the bankruptcy case was reopened, Edwards issued a notice
informing creditors that assets had been located and they could file proofs of
claim.

## IV. The District Court's Resolution of the Issue

In this posture — with the Bankruptcy Case reopened for the limited purposes stated above, and the SDNY action stayed — the parties continued to argue in both courts about whether Ashmore had been, and continued to be, a proper party-in-interest.

### A. Ashmore's Motion in Bankruptcy Court

When Judge Papalia declined to opine on whether the litigation had in fact been abandoned to Ashmore, he had invited further briefing, stating that if the issue was "ever presented to [him] in the proper context, then [he would] decide it." J.A. 884. Ashmore moved for such a determination on April 5, 2016. The bankruptcy court scheduled a hearing to resolve the issue on May 10, 2016, of which Edwards informed Judge Torres.

### B. Judge Torres's 2016 Opinion

The day before the bankruptcy court hearing, Judge Torres issued an opinion concluding that Edwards had not abandoned the action to Ashmore under § 554(c), since Ashmore had failed to list the asset on his Schedule B. She then dismissed the district court action as to Ashmore and directed Edwards to substitute in as the proper party-in-interest.

17

*C. Appeal to this Court*

Ashmore immediately appealed to this Court on the issue of whether the litigation had been abandoned to him. In a 2017 opinion, we dismissed the case for lack of jurisdiction, concluding that the "dismissal of the case as to Ashmore and the substitution of the Trustee as the plaintiff are interlocutory orders that are not immediately appealable." *Ashmore v. CGI Grp., Inc.*, 860 F.3d 80, 82 (2d Cir. 2017).

*D. Official Abandonment of the SOX Action*

Meanwhile, on September 5, 2017, Edwards and Ashmore moved in bankruptcy court for approval of a settlement in which Edwards would officially abandon the SOX action under Section 554(a) of the Bankruptcy Code in exchange for Ashmore paying in full any creditors who had filed proofs of claim. On July 25, 2017, in anticipation of settlement, Ashmore officially amended his Schedule B form to include the SOX litigation. The pertinent terms of the proposed settlement included:

> (1)    that Ashmore would "deliver sufficient funds . . .
>          to pay all of the allowed Claims and the
>          Administrative Costs in full;"
> (2)    that Edwards would file a Notice of Abandonment
>          under Section 554(a); and

(3)     that Edwards would use her "best efforts to
reasonably cooperate with the Debtor in the
substitution of the Debtor in the SOX action as the
plaintiff and proper party in interest."

J.A. 1039–40.

The bankruptcy court held a hearing on the proposed settlement on

October 3, 2017, and approved it over CGI's objections.[7] As a result, Ashmore

paid $50,356.88 to his creditors, covering the total amount of proofs of claim filed

since the reopening of the bankruptcy case. The difference between this

settlement payment and the $293,784 of claims that Ashmore originally listed on

his Schedule F is largely attributable to: (1) $135,878 in student loans that were

not dischargeable (and presumably not discharged); and (2) approximately

$93,000 in claims related to his divorce that Ashmore resolved with his former

wife outside of the bankruptcy proceedings.

### E. Dismissal for Judicial Estoppel

After the SOX litigation was officially abandoned by Edwards, she and

Ashmore jointly moved in the district court to restore Ashmore as the plaintiff

---

[7] Judge Papalia did, however, include a rider to the Agreement stating that "[t]he
recitals in this Stipulation and Consent Order . . . are binding upon only the
Trustee and the Debtor. . . . [They] are not binding upon CGI, nor . . . [shall they]
have any preclusive effect with respect to CGI in the SOX action." J.A. 1107.

19

and proper party-in-interest. Ashmore also renewed an earlier motion for reconsideration of the 2016 Order dismissing the case for lack of standing, and CGI renewed an earlier motion for dismissal on the grounds of judicial estoppel.[8]

On August 10, 2018, Judge Torres resolved all outstanding motions. She first granted Ashmore's motion to be substituted as plaintiff, then denied his motion for reconsideration as moot in light of Edwards's official abandonment of the SOX action, and finally granted CGI's motion to dismiss on the grounds of judicial estoppel.

This appeal follows.

## DISCUSSION

On appeal, Ashmore challenges three orders of the district court: first, the August 10, 2018, Order in which the district court dismissed his case on the grounds of judicial estoppel; second, the May 9, 2016, Order in which the district court found that Edwards had not abandoned the litigation to Ashmore and so dismissed the case for lack of standing; and third, the September 23, 2015,

---

[8] During the pendency of the settlement approval, both parties had made motions in the SDNY— CGI to dismiss the SOX action on the grounds of judicial estoppel, and Ashmore for reconsideration of the 2016 Order. Judge Torres denied both motions pending the bankruptcy court's decision, finding that "judicial efficiency warrants waiting until the bankruptcy court has determined whether to approve the settlement." J.A. 1026.

decision of the district court granting summary judgment to CGI on his contract claims.

## I. Standard of Review

A district court's decision to invoke judicial estoppel is reviewed for abuse of discretion. *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 265 (2d Cir. 2018). We have emphasized, however, that "[w]hile deferential, abuse of discretion review is not a rubber stamp. A district court may not do inequity in the name of equity." *Id.* at 266 (internal quotation marks omitted).

We review orders granting dismissal or summary judgment *de novo*. *Giuppone v. BH S & B Holdings LLC*, 737 F.3d 221, 225 (2d Cir. 2013).

## II. Judicial Estoppel

"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). Judicial estoppel functions to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotation marks and citations omitted). Thus,

Case 14-2592, Document 122-1, 03/30/2019, 2576039, Page22 of 51

"[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* at 749 (internal quotation marks and citations omitted).

Judicial estoppel is properly invoked where: (1) a party's later position is clearly inconsistent with its earlier position, and (2) the party's former position has been adopted in some way by the court in an earlier proceeding. *Id.* at 750–51. We have also often, but not always, required a showing that the party asserting the two inconsistent positions would derive an unfair advantage against the party seeking estoppel. *Id.* at 751; *see also BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 194 (2d Cir. 2017). Finally, "[b]ecause the doctrine is primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain." *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (internal quotation marks omitted).

In sum, "[j]udicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate

adoption of inconsistent positions in successive suits." *Wight*, 219 F.3d at 89.

Moreover, "there must be a true inconsistency between the statements in the two

proceedings. If the statements can be reconciled there is no occasion to apply an

estoppel." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72–73 (2d Cir. 1997). Finally,

the "exact criteria for invoking judicial estoppel will vary based on specific

factual contexts." *Adelphia*, 748 F.3d at 116 (internal quotation marks and citations

omitted).

### A. Judicial Estoppel in the Bankruptcy Context

Judicial estoppel is regularly invoked in the bankruptcy context;

specifically, "[j]udicial estoppel will prevent a party who failed to disclose a claim

in bankruptcy proceedings from asserting that claim after emerging from

bankruptcy." *BPP*, 859 F.3d at 192 (internal quotation marks and citations

omitted). Moreover, whether a party is advancing inconsistent claims in the

bankruptcy context "is largely informed by the bankruptcy court's treatment of

those claims." *Adelphia*, 748 F.3d at 118. We have emphasized that

"[d]etermination of the ownership of assets is at the core of the bankruptcy

process. . . . It is therefore crucial, both for the sake of finality and the needs of

debtors and creditors, that claims to ownership of various assets be determined in the bankruptcy proceedings." *Id.*

For the purposes of judicial estoppel, we typically find that a bankruptcy court "adopted" a particular position "when the bankruptcy court confirms a plan pursuant to which creditors release their claims against the debtor." *BPP*, 859 F.3d at 194 (internal quotation marks and citations omitted). We have recently affirmed the use of judicial estoppel in two opinions dealing with failure to disclose assets in bankruptcy court.

First, in *Adelphia Recovery Trust v. Goldman, Sachs & Company*, we affirmed the use of judicial estoppel where the plaintiff cable company had failed to list on its bankruptcy filings an account whose ownership was in question. 748 F.3d at 118. Throughout a five-year bankruptcy proceeding, plaintiff never claimed the account as one of its assets; however, it later brought suit in the district court claiming that the account was its own. We held that judicial estoppel was properly invoked, concluding that "[a] different ruling would threaten the integrity of the bankruptcy process by encouraging parties to alter their positions as to ownership of assets as they deem their litigation needs to change." *Id.* at 119.

24

Then, in *BPP Illinois LLC v. the Royal Bank of Scotland Group PLC,* we affirmed the use of judicial estoppel where a group of hotel-related businesses brought a fraudulent inducement suit against several banks, but where, in a parallel bankruptcy proceeding, their "schedule of . . . assets, including legal claims, never listed [the fraudulent inducement] claims," 859 F. 3d at 191, and plaintiffs never disclosed the parallel legal proceedings throughout a two-year bankruptcy proceeding. *Id.* at 191–94.

In contrast, in *Clark v. AII Acquisition, LLC,* we held that the district court abused its discretion where a debtor, "unsure of whether his bankruptcy asset schedules needed to be updated to reflect his diagnosis [of mesothelioma] and intention to litigate — alerted his bankruptcy counsel . . . and trusted him to do what was required under the law." 886 F.3d at 264 (internal quotation marks omitted). Clark's counsel failed to convey the information to the bankruptcy court, however, and the district court subsequently dismissed Clark's personal injury suit on judicial estoppel grounds. *Id.* at 265. Noting that "judicial estoppel is not a mechanical rule," *id.* at 266, we held that "[n]othing in the record . . . suggests that the Clarks withheld Mr. Clark's diagnosis from the bankruptcy

court in an effort to game the bankruptcy system," and that therefore "principles of equity require the courts to entertain [the] personal injury claims," *id.* at 268.

### B. Third Circuit Law

We look to the law of the circuit in which the bankruptcy proceeding occurred "for the limited purpose" of determining whether the failure to list a particular claim on a debtor's bankruptcy filings "is equivalent to an assertion that [the debtor] did not have such a claim." *BPP*, 859 F.3d at 192.

Because Ashmore's bankruptcy proceeding was filed in New Jersey, we examine whether, under Third Circuit law, failure to list a claim amounts to a denial that the claim exists. As discussed below, the Third Circuit's analysis depends on the facts and circumstances of the case, and is intertwined with that circuit's judicial estoppel standard.

More specifically, the Third Circuit has "expressly left open the question of whether . . . nondisclosure [on bankruptcy filings], standing alone, can support a finding that a plaintiff has asserted inconsistent positions within the meaning of the judicial-estoppel doctrine." *Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996). Because the Third Circuit test focuses heavily on the intersection between inconsistent assertions and bad faith on behalf of the party

26

accused of making the contradictory statements, it has not needed to answer that narrow question, but has instead stated that "[a]sserting inconsistent positions does not trigger the application of judicial estoppel unless intentional self-contradiction is . . . used as a means of obtaining unfair advantage." *Id.* (internal quotation marks omitted). It has further clarified that "[a]n inconsistent argument sufficient to invoke judicial estoppel *must* be attributable to *intentional wrongdoing." Id.* (emphasis added).

In its leading cases on the intersection of judicial estoppel and bankruptcy-related nondisclosures, the Third Circuit has twice considered whether judicial estoppel was appropriate and answered in the negative. First, in *Ryan*, the court considered whether the debtor's failure to list various claims for breach of warranty on either his Schedule B or SOFA forms was tantamount to an assertion that they did not exist. *Id.* While Ryan had not yet filed suit at the time he filed for bankruptcy, the Schedule B at the time required the debtor to list, *inter alia*, "contingent and unliquidated claims of every nature." *Id.* The court found that Ryan had violated his statutory duty of full disclosure by failing to list the claim, but nevertheless found judicial estoppel inappropriate under the facts of that

27

case, noting that Ryan's lack of disclosure did not provide a basis for inferring his

bad faith. *Id.* at 364. The court then continued:

> [P]olicy considerations militate against adopting a rule
> that the requisite intent for judicial estoppel can be
> inferred from the mere fact of nondisclosure in a
> bankruptcy proceeding. Such a rule would unduly
> expand the reach of judicial estoppel in post-bankruptcy
> proceedings and would inevitably result in the
> preclusion of viable claims on the basis of inadvertent or
> good-faith inconsistencies. While we by no means
> denigrate the importance of full disclosure or condone
> nondisclosure in bankruptcy proceedings, we are
> unwilling to treat careless or inadvertent nondisclosures
> as equivalent to deliberate manipulation when
> administering the "strong medicine" of judicial
> estoppel.

*Id.*

More recently, in *In re Kane*, the court found no error when a district court

did *not* invoke estoppel when a debtor had listed her divorce proceeding on her

SOFA, but not, initially, on her Schedule B. 628 F.3d 631 (3d Cir. 2010). The *Kane*

Court noted that *Ryan* had left open the question of whether nondisclosure alone

could support a finding of "irreconcilable inconsistency," and held that judicial

estoppel was not required. *Id.* at 639. The court emphasized that "a debtor's

burden is limited to reasonable diligence in completing schedules." *Id.* at 643

(internal quotation marks and alterations omitted).

28

We thus cannot discern in Third Circuit law an absolute answer to the narrow question our case law asks us to consider: whether any nondisclosure on behalf of Ashmore constitutes an assertion that the litigation does not exist. The answer, it seems, is that it depends upon the facts and circumstances of the case, and how those facts and circumstances relate to the Third Circuit's distinct test for when to apply judicial estoppel's "strong medicine." Moreover, in cases not terribly different from the instant one, the Third Circuit has leaned against its application.

Having so established, we proceed to an examination of the four factors that our precedent requires us to consider.

*C. Application of the Four Factor Test*

In its opinion, the district court concluded that each of the factors weighed in favor of judicial estoppel. Ashmore argues that these conclusions were erroneous. We will examine each factor in detail.

*1. Advancement of Inconsistent Factual Positions*

The first requirement for a finding of judicial estoppel is that "a party's later position is 'clearly inconsistent' with its earlier position." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010).

29

The district court first analyzed Third Circuit law, concluding that the failure to list a pending action in the schedule of assets constitutes an assertion that the action does not exist. It based this conclusion on three things: (1) a reading of the pre-*Kane* case law which emphasized the debtor's duty of disclosure; (2) two district court cases in which courts have stated, without citation, that nondisclosure is an assertion that an action does not exist;[9] and (3) the contention that *Kane* is distinguishable from the instant case, based primarily on the fact that the debtor in *Kane* almost immediately amended her Schedule B (whereas Ashmore amended it four years after the initial filing).

We find these rationales unpersuasive. First, as noted above, the better reading of Third Circuit case law suggests that the question is not settled and that the court, despite numerous opportunities to opine on the question, has specifically left it open, preferring instead to focus its analysis on the bad or good faith of the debtor. Without a doubt the Third Circuit emphasizes the critical nature of the duty of disclosure; it pairs that directive, however, with concern for preclusion of otherwise viable suits based on "careless or inadvertent

---

[9] *Bartel ex rel. McQueen v. Charles Kurz & Co.*, 110 F. Supp. 3d 579, 587 (E.D. Pa. 2015); *Giordano v. Saxon Mortg. Servs., Inc.*, 2013 WL 12158378, at *7 (D.N.J. Oct. 31, 2013).

nondisclosures," *Ryan*, 81 F.3d at 364, and limits a debtor's burden to "reasonable diligence," *In re Kane*, 628 F.3d at 643, particularly in cases where the trustee or bankruptcy judge has indicated to the debtor that he has satisfied his disclosure requirements.

Second, our analysis is not affected by the fact that two district courts in the Third Circuit have stated, without supporting citation, that a failure to disclose a claim is a representation that such a claim does not exist. Such decisions are not binding on us and do not constitute persuasive evidence that the Third Circuit did not mean what it has clearly stated.

Third, the district court's conclusion that *Kane* is inapposite is entwined with its finding that "Ashmore's conduct at several stages of the Bankruptcy action and this action suggests an effort to conceal the existence of this action as an asset and shield it from his creditors." *Edwards v. CGI Grp. Inc.*, No. 11-cv-8611(AT), 2018 WL 4043142, at *8 (S.D.N.Y. Aug. 10, 2018). We do not agree that Ashmore's actions are consistent with an intent to conceal the SOX action's existence. The district court cites three actions taken by Ashmore as supporting its conclusion: (1) the fact that Ashmore's initial June 2013 motion to dismiss his bankruptcy case cited only to "intervening matters;" (2) that Ashmore and

Edwards failed to disclose the Letter Agreement to the bankruptcy court; and (3) that Ashmore opposed Edwards's second motion to reopen and argued in the district court that she had abandoned the action to him. These actions cannot bear the weight assigned to them by the district court, especially in light of the numerous actions that Ashmore took that demonstrate candor about the SOX litigation.

To begin with, we note that in Ashmore's very first filing, as part of the SOFA, he listed the SOX litigation by name and docket number. Undoubtedly, he should have listed it on the Schedule B. But it is difficult to attribute to a *pro se* litigant a scheme to hide a fact that he disclosed on what would surely appear to a lay person to be a parallel schedule. Moreover, Ashmore did mention the litigation to Edwards at the creditors' meeting, and provided her with a copy of the complaint a few weeks later. Shortly thereafter, Edwards provided that communication to the bankruptcy judge and posted it on the docket for all to see. It is thus undisputed that by July 2013, a mere three months after his initial filing, both Edwards, as the estate trustee, and Judge Stern, the judge presiding over the bankruptcy action, were fully aware of the SOX litigation, and thus well situated to protect the creditors' interests. That Ashmore initially attempted to dismiss his

bankruptcy case due to "intervening matters," and did not elaborate on what

those matters were until asked, is insufficient evidence of an intent to conceal.

Indeed, it is not clear how Ashmore's effort to *undo* his bankruptcy filing, rather

than to press ahead to obtain a discharge, suggests an effort to hide assets in

order to defraud creditors. And clearly, from that point forward, rather than

attempting to conceal the action, nearly every action Ashmore took in

bankruptcy court had the SOX litigation at its centerpiece.

That Edwards initially failed to disclose the Letter Agreement to the

bankruptcy court is probative not of *Ashmore's* bad faith or willingness to play

"fast and loose" with the judiciary, but, if anything, of Edwards's dereliction of

duty under Bankruptcy Rule 9019(a), which requires the court to approve a

"compromise or settlement" with notice to the creditors. Indeed, it is difficult to

fault Ashmore, a *pro se* debtor, when Edwards was the only party with the

authority to move the bankruptcy court for approval of the Letter Agreement. *See*

Fed. R. Bankr. P. 9019(A) ("*On motion by the trustee* and after notice and a hearing,

the court may approve a compromise or settlement.") (emphasis added). It is

even more difficult to do so once we also recognize that it is the trustee, not the

debtor, who is charged with serving as the representative of the creditors and as

33

an officer of the court. Moreover, there is no evidence that Ashmore designed or drafted the terms of the Letter Agreement, which instead was sent by Edwards to Ashmore for his signature. Even assuming that Ashmore was the moving force behind the Letter Agreement, it is apparent from the face of the Agreement that, far from seeking to channel recovery to Ashmore at the creditors' expense, the Letter Agreement sought to preserve the creditors' rights in any settlement.

Finally, Ashmore's legal argument in the district court that his Letter Agreement with Edwards prohibited him from arguing about abandonment if the SOX litigation generated a significant settlement is just that — a legal argument. It is not probative of any intention on Ashmore's part to conceal the SOX litigation from the bankruptcy court. In fact, in arguing abandonment, Ashmore consistently represented to the district court and the bankruptcy court that, under the Letter Agreement, his creditors had a right to any recovery that he might obtain upon successful prosecution of the whistleblower suit.

Under these circumstances, it cannot be concluded that Ashmore asserted clearly inconsistent positions. Ashmore's position in the district court — that he did indeed have a SOX claim — is clearly not inconsistent with: (1) listing the litigation on his SOFA at the time of filing; (2) disclosing at least the existence of

the litigation at the creditors' meeting; (3) attaching the complaint at Edwards's
request when he first attempted to dismiss the bankruptcy action; or (4) giving
in-depth testimony at the July 23, 2013, hearing as to the nature of the SOX action
and his desire to control the litigation. The scant facts relied upon by the district
court are not sufficient, in the face of these actions, to support a finding that
Ashmore intended to persuade the bankruptcy court that he did not have a claim
against CGI. We therefore hold that the district court clearly erred in finding that
Ashmore's positions were "clearly inconsistent," and that it erroneously
interpreted Third Circuit law when it concluded that his failure to list the claim
on his Schedule B was, in and of itself, an assertion that the litigation did not
exist.

### 2. *Adoption*

The second requirement for judicial estoppel is a finding that "the party's
former position has been adopted in some way by the court in the earlier
proceeding." *DeRosa*, 595 F.3d at 103.

The district court concluded that the bankruptcy court adopted the
position that there was no SOX litigation, citing several district court cases for the
proposition that "a discharge of debts . . . together with the closing of a

bankruptcy case without the distribution of an asset, constitutes an adoption of the position that the asset does not exist." *Edwards*, 2018 WL 4043142, at *8. It thus found that, when the bankruptcy court originally discharged Ashmore's debts without the distribution of any assets on November 18, 2013, it adopted the position that the SOX litigation did not exist.

Upon a thorough review of the record, the district court has again sliced the argument too narrowly. The record does not tell us why Judge Stern did not inquire about the SOX litigation when he discharged Ashmore's debts; it does, however, make clear that Judge Stern was fully aware of, and previously considered thoroughly, the potential of the SOX litigation to generate assets for the creditors. It is true that under our case law, his discharge of the debt in 2013 could be read as an adoption of the position that the litigation did not exist. We do not question the holding of *Adelphia* that "adoption in judicial estoppel is *usually* fulfilled when the bankruptcy court confirms a plan pursuant to which creditors release their claims against the debtor." 748 F.3d at 118 (internal quotation marks and alterations omitted; emphasis added). But given the meandering course of this bankruptcy under the inconsistent actions of Edwards, the trustee, this is not the *usual* bankruptcy case. At a minimum, from the time

that the bankruptcy action was reopened in March 2016, "for the limited purpose of administering the Sarbanes Oxley Litigation," J.A. 904, there can be no credible argument that the bankruptcy court had adopted such a position.

Thus, when looked at as a whole, in light of the bankruptcy court's clear understanding in July 2013 that the litigation existed (despite its willingness later to discharge Ashmore's debts), as well as its total clarity as to the potential value of the litigation upon Edwards's motion to reopen, we cannot say that the bankruptcy court adopted a position that the SOX litigation did not exist. We therefore conclude that the district court's analysis of the adoption question was erroneous.

### 3. Unfair Advantage/Detriment

We often require — in addition to the two requirements above — that the "party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire,* 532 U.S. at 751. However, "[w]e have been particularly apt to overlook the general requirement that a party seeking estoppel have suffered prejudice where . . . the party to be estopped failed to make the proper disclosures during bankruptcy," *Clark*, 886 F.3d at 267, and have instead justified

37

the imposition of judicial estoppel in part on any unfair advantage the estopped party may have gained over "former creditors, who had a right to consider the [undisclosed] claims during the bankruptcy proceeding," *BPP*, 859 F.3d at 194.

The district court considered this factor and concluded that "Ashmore derived an unfair advantage from his failure to disclose this action as an asset to the Bankruptcy Court." *Edwards*, 2018 WL 4043142, at *9. That conclusion, too, is erroneous, as the argument that Ashmore gained any advantage at the expense of his creditors is theoretical and speculative.

Although Ashmore was initially discharged of his debts in September 2013, the Letter Agreement provided that he would consent to reopen the case if he succeeded in the SOX litigation. And in any event, the bankruptcy *was* later reopened and the creditors were advised of the litigation and invited to submit proofs of claim against the estate. Though it recognized these facts, the district court analyzed Ashmore's potential unfair advantage over his creditors by comparing the original amount owed at the time of the 2013 filing (over $290,000) with the roughly $50,000 in claims that were filed upon the reopening of his bankruptcy action. It thus inferred that Ashmore was able to save nearly $240,000

38

through his alleged attempts to conceal the action from the creditors. We cannot agree.

As an initial matter, and as the district court referenced in a footnote, of the $293,784 Ashmore originally listed on his Schedule F, $135,878 was for nondischargeable student loans. Accordingly, the discharge did not affect Ashmore's liability for that amount. Roughly $93,000 of the original amount listed represented debts owed to his wife and wife's attorney as part of a divorce proceeding.[10] Ashmore later represented to the district court that "in May 2015, [he] reached an agreement with his former wife that resolve[d] the economic and other claims between them, including her claims in bankruptcy." 1:11-cv-08611-AT (S.D.N.Y.), ECF No. 179, n.7. CGI offers no evidence or analysis to discredit that representation.

Of the remaining roughly $65,000 that Ashmore owed to creditors, claims were filed in the amount of $50,356.88. To conclude that Ashmore was unfairly advantaged because no claims were filed for the other roughly $15,000 is to

---

[10] More specifically, Ashmore's Schedule F lists the following potential claims: $49,530 to Ashmore's ex-wife as part of a divorce judgment; $30,000 for Ashmore's ex-wife's legal fees; $12,046 for Ashmore's share of a court-appointed attorney for his children during the divorce; and $1634 to a "charged off account during divorce due to ex-wife charges." J.A. 104–05. This totals $93,210.00.

engage in an unduly speculative enterprise. Many of the claims were for as little as $125 or $1000. There is substantial uncertainty as to whether the creditors who chose not to file a proof of claim in 2016 after being advised of the potential value of the whistleblower suit *might* have found it worthwhile to do so in 2013 had they known about the same suit then. Our precedents, *Adelphia* and *BPP*, deal with numbers at a completely different scale. Moreover, they deal with situations where the litigation was *never* disclosed. Here, every creditor was notified in 2016 of the opportunity to file a claim in light of a potentially valuable SOX litigation. The reasons individual creditors filed or did not file are presumably various; there is no evidence, however, that any of them were disadvantaged by anything that happened in either proceeding.

Moreover, CGI has failed to demonstrate that it has been unfairly disadvantaged by Ashmore's actions.[11] While we have no occasion to address the

---

[11] We find no merit in CGI's argument, on appeal, that it was disadvantaged because of "Ashmore's lack of standing and his continued attempts to regain control of this litigation." Appellee Br. 53–54. The parties on both sides have taken strategic approaches that generated costs for the other side, as is the case in all litigation. That cannot be what we mean when we discuss an "unfair detriment" that would lead to judicial estoppel. Whether Ashmore or Edwards controlled the litigation, the plaintiff's position in that litigation was adverse to CGI, both had an interest in winning a substantial award at CGI's expense, and CGI's chances of prevailing on the SOX claim were unaffected.

merits of Ashmore's underlying suit, it does not escape our notice that CGI was

denied summary judgment on Ashmore's SOX claim. To estop Ashmore from

pursuing a non-frivolous claim based on a speculative and hypothetical

unfairness to the creditors who chose not to file a claim even after being advised

that the estate had assets after all, and thus to terminate a potentially meritorious

suit, does not comport with judicial estoppel's proper role. Indeed, it risks

"do[ing] inequity in the name of equity." *Clark*, 886 F.3d at 266 (internal quotation

marks omitted).

### 4. Impact on Judicial Integrity

Finally, "because [judicial estoppel] is primarily concerned with protecting

the judicial process, relief is granted only when the risk of inconsistent results

with its impact on judicial integrity is certain." *Adelphia*, 748 F.3d at 116

(alterations and internal quotation marks omitted).

The district court here concluded that invoking judicial estoppel was

necessary to protect judicial integrity, holding that to "[a]llow[] a debtor to

engage in such conduct 'would only diminish [his] incentive to provide a true

and complete disclosure of [his] assets to the bankruptcy courts.'" *Edwards*, 2018

Case 11-2592, Document 122-1, 03/30/2019, 2573043, Page 243 of 51

WL 4043142, at *9, quoting *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 599

(S.D.N.Y. 2013).

We disagree that judicial integrity requires dismissal here. Both the

bankruptcy court and Edwards made a series of strategic decisions in an attempt

to best preserve the SOX litigation as a potential asset for Ashmore's creditors,

concluding in an official settlement whereby Ashmore paid the claims of all

creditors who sought relief,[12] and Edwards officially abandoned the litigation to

him. To now find that Ashmore concealed the action from that same court would

undermine the years of hearings and motions on exactly this issue.

In *Azuike*, the district court case from which the opinion below quotes, the

facts tell a different story. There, the plaintiff, who was represented by counsel at

the time of his bankruptcy filing, failed to list his EEOC claim on *either* his SOFA

*or* his Schedule B, an omission that was not remedied *at any time* prior to the

closing of his bankruptcy case. *Id.* at 594. He reopened his bankruptcy case and

disclosed the action to the trustee and bankruptcy court *only* when his adversary

---

[12] The Department of Education filed a proof of claim for the entire balance due and owing on Ashmore's student loans; however, the bankruptcy court determined on June 29, 2016, that the student loans, on which Ashmore was not in default, were nondischargeable under the Bankruptcy Code.

in district court challenged his standing. *Id.* at 596. Here, plaintiff filed *pro se*, *did* disclose the action in his initial filings, *did* disclose in considerable detail to both Edwards and the bankruptcy court the nature of the SOX action, and even sought to withdraw his petition rather than seek a discharge, long before the bankruptcy court decided to grant a (later revoked) discharge.

Thus, the concerns for judicial integrity cited by the district court, based on a case in which a pending claim was never disclosed to the bankruptcy court, are considerably less weighty under the distinct factual circumstances presented by this case.

*D. Previous Cases*

Our conclusion is strengthened by critical distinctions between this case and the other bankruptcy cases in which this court has approved the use of judicial estoppel.

The most salient distinction is that in each other case in which we have had the opportunity to consider nondisclosure of a lawsuit in a bankruptcy proceeding, the lawsuit has been *fully nondisclosed* — that is, the action was mentioned neither on the Schedule B nor on the SOFA, nor at the meeting of creditors, nor at any point in the bankruptcy proceedings. That was the case both

in *BPP*, where the plaintiff at no point in the bankruptcy proceedings disclosed

any potential claim relating to LIBOR manipulation, 859 F.3d at 192, and in

*Adelphia*, where the plaintiff at no time during its bankruptcy proceedings

claimed ownership of the account in question, 748 F.3d at 118. It was true even in

*Clark*, in which we found judicial estoppel wrongly invoked despite the fact that

the debtor's personal injury lawsuit was never disclosed to the bankruptcy court.

886 F.3d at 268.

Two of our sister circuits have dealt with more analogous circumstances, in

which pending litigation was orally disclosed to the trustee, but not included on

the written bankruptcy filings. In *Spaine v. Community Contacts, Inc.*, 756 F.3d 542

(7th Cir. 2014), the plaintiff, a *pro se* bankruptcy filer, failed to list a pending

employment discrimination claim on either her Schedule B or her SOFA, *id.* at

544. She had, however, "told the bankruptcy trustee about her lawsuit," and

claimed in an affidavit that she had not been "told by the bankruptcy court of

any need to amend her schedules." *Id.* at 545. The *Spaine* Court, noting that the

evidence showed only "incomplete schedules that were timely corrected through

an oral disclosure," concluded that in order for judicial estoppel to apply, the

defendant would have needed to "show more than an initial nondisclosure on a

44

bankruptcy schedule."[13] *Id.* at 547–48.  It then went on to state that "Spaine's

creditors were not and could not have been injured by incomplete Chapter 7

schedules that were orally corrected before Spaine received a discharge," and

contrasted the case to others in which "debtors engaged in affirmative

misrepresentations," including those who denied their pending lawsuits when

asked directly by the trustee. *Id.* It held that where, in contrast, the evidence was

"limited to an omission followed by a truthful oral disclosure," judicial estoppel

was no longer the proper remedy. *Id.* at 548.

The D.C. Circuit reached a contrary result in *Marshall v. Honeywell*

*Technology Systems Inc.*, 828 F.3d 923, 925 (D.C. Cir. 2016). There, too, plaintiff

failed to disclose an employment discrimination suit on *either* her SOFA *or* her

Schedule B, but did make an oral disclosure. *Id.* The court there found judicial

estoppel appropriate, concluding, in contrast to the Seventh Circuit, that "oral

disclosure to the trustee did not constitute notice to her creditors and could not

correct the false information she conveyed on her schedules." *Id.* at 930. Its

conviction that judicial estoppel was appropriate was strengthened by the facts of

---

[13] The Court did note that it would have reached a different result "[i]f there were undisputed evidence that Spaine intentionally concealed her claim." *Spaine*, 756 F.3d at 548.

that case in which the debtor had listed *some*, but not *all*, of her administrative proceedings. *Id.* at 931. This led the *Marshall* Court to the conclusion that her omission was not likely the product merely of inadvertence or mistake. *Id.* at 931–32.

We conclude that the circumstances here are more like those in *Spaine*, and, like the Seventh Circuit, we find judicial estoppel inappropriate. Indeed, Ashmore was in some ways *more* forthcoming than Spaine: unlike Spaine, Ashmore's pending litigation *was* listed in his original bankruptcy filings. We therefore think that Ashmore's arguments against judicial estoppel are stronger than Spaine's were and, as noted above, we do not think the record supports a finding that there was "undisputed evidence that [Ashmore] intentionally concealed [his] claim." *Spaine*, 756 F.3d at 548.

We do not discount or deprecate the failure to accurately list a debtor's assets. On the contrary, we recognize again today that full disclosure by debtors is essential to the proper functioning of the bankruptcy system and that, therefore, judicial estoppel is an appropriate remedy for those who play "fast and loose" with the disclosure requirements. But we balance that concern against our conviction that the "exact criteria for invoking judicial estoppel will vary based

46

on 'specific factual contexts,' and that 'courts have uniformly recognized that its

purpose is to protect the integrity of the judicial process by prohibiting parties

from deliberately changing positions according to the exigencies of the

moment.'" *Adelphia*, 748 F.3d at 116, quoting *New Hampshire*, 532 U.S. at 749–51.

We further reaffirm that "judicial estoppel is not a mechanical rule." *Clark*, 886

F.3d at 266.

    We therefore hold that where, as here, a *pro se* debtor has listed his

pending litigation on the SOFA, rather than the Schedule B as it was constituted

at the time of Ashmore's filing, and then disclosed it to the trustee and the

bankruptcy court prior to discharge of his debt, and the trustee and the

bankruptcy court were on sufficient notice to take steps to protect the creditors'

interests, the debtor is not estopped from pursuing that litigation by virtue of the

doctrine of judicial estoppel.[14] For estoppel to apply, there must be greater indicia

than presented here of an intent to deceive the court for the debtor's benefit.[15]

---

[14] We express no view as to whether different inferences would be warranted if a
petitioner failed to list a lawsuit on the present Schedule B form, which explicitly
asks for information about legal claims.

[15] We note that in the past we have referenced a "good faith" exception to the
doctrine of judicial estoppel. *See Simon v. Safelite Glass Corp.*, 128 F.3d 68, 73 (2d
Cir. 1997). We have rarely invoked this exception, or explored its limits, and need
not do so today, as we find that the affirmative requirements for judicial estoppel

## III. Abandonment under Section 554(c)

Ashmore also appeals the May 9, 2016, Order of the district court in which

it found that he was without standing to pursue the SOX action, the action never

having been properly abandoned to him by Edwards. He argues that his oral

disclosure and disclosure on the SOFA is adequate for the purposes of the

§ 521(a)(1) "scheduling" that is required by § 554(c).

That Order, however, is moot. Since it was issued, Edwards has

unquestionably effected a successful abandonment of the litigation under

§ 554(a). There is thus no remaining question as to Ashmore's standing. We

therefore leave for another day the question of whether an asset disclosed to the

bankruptcy court orally and on a SOFA, but not on a Schedule B, is abandoned to

the debtor.[16]

---

were not met.

[16] We note that in *Ayazi v. New York City Board of Education*, 315 F. App'x 313, 315
(2d Cir. 2009), a panel of this court found, by summary order, that such
circumstances would *not* lead to abandonment by operation of law, emphasizing
that the "strict formalities surrounding abandonment exist for the protection of
the creditors."

48

## IV. Contract Claims

Ashmore also appeals the grant of summary judgment to CGI on his

contract claims, arguing that material questions of fact remain as to whether CGI

denied him a bonus to which he was contractually entitled.

Ashmore's offer letter states as follows:

> You will be eligible to be a participant in the CGI-Profit
> Participation Program. Through this program, you can
> earn an annual bonus based on the achievement of
> certain financial results, client satisfaction, member
> satisfaction and other measures tied to your
> performance. This program is dependent upon the
> success of the company, your business unit and your
> own performance.

J.A. 295. Ashmore alleges that CGI breached the terms of the offer letter by failing

to provide him a bonus under this program. He argues that material questions of

fact remain as to his eligibility for a bonus. We disagree.

First, by its very terms, the bonus is discretionary, and dependent on

several factors, including both Ashmore's and the company's performance.

Second, evidence was presented that it was the clearly-stated policy of

Ashmore's group to offer a bonus only after an employee had worked for at least

49

six months and was still employed at the end of the fiscal year.[17] Ashmore

presented no evidence to the contrary.

In this case, Ashmore began work in May 2009. Having not worked for

CGI for 6 months by the close of that fiscal year — September 30, 2009 — he was

not eligible for a bonus at that time. While Ashmore worked for more than six

months in the 2009–2010 fiscal year, he was fired before the end of the fiscal year,

and thus he was not eligible for a bonus that year. Although Ashmore argues that

the offer letter requires him to receive a bonus, he points to no evidence

supporting that interpretation. We thus find that there is no material question of

fact as to whether CGI breached the terms of the offer letter, and affirm the

district court's grant of summary judgment on Ashmore's contract claims.

## V. Judicial Reassignment

Finally, Ashmore requests reassignment to a new judge, arguing that his

case "deserves a fresh look by a different pair of eyes," citing *Armstrong v.*

*Guccione*, 470 F.3d 89, 113 (2d Cir. 2006). He states without support that Judge

---

[17] On December 14, 2009, Ashmore's supervisor, Marybeth Carragher, sent the following email: "It has always been our policy . . . not to give [bonuses to] those members on board less than 6 months of the [fiscal year]." J.A. 304.

Torres has "shown . . . animus to Ashmore," such that "her impartiality might reasonably be questioned." Appellant Br. 68. We disagree.

The premise of Ashmore's request is that reassignment is needed because the "facts might reasonably cause an objective observer to question the judge's impartiality." *Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010). But Ashmore has not pointed to any such facts, nor could he on the record before us. While Judge Torres found that Ashmore had engaged in deceptive conduct, absolutely nothing in the record suggests that her judgment was affected by impartiality or animus. We therefore deny Ashmore's request for reassignment.

## CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district court insofar as it applies either judicial estoppel or lack of standing to dismiss Ashmore's claims under the Sarbanes-Oxley Act, AFFIRM the judgment dismissing his breach of contract claim, and remand for further proceedings before Judge Torres consistent with this opinion.